Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/07/2016 12:09 PM CDT

IN RE INTEREST OF KYLIE P., A CHILD
UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
KYLIE P., APPELLANT.

___ N.W.2d ___

Filed March 15, 2016.    No. A-15-707.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which the appellate court must resolve independently of the trial court.
3. **Juvenile Courts: Probation and Parole.** Neb. Rev. Stat. § 43-286 (Cum. Supp. 2014), governing placement of a juvenile at a youth rehabilitation and treatment center as a condition of an order of intensive supervised probation, requires that before a juvenile is placed in a youth rehabilitation and treatment center, the Office of Probation Administration must review and consider thoroughly what would be a reliable alternative to commitment at such a center. Upon reviewing the juvenile's file and record, the Office of Probation Administration shall provide the court with a report stating whether any such untried conditions of probation or community-based services have a reasonable possibility for success or that all levels of probation and options for community-based services have been studied thoroughly and that none are feasible.
4. ____: ____. Neb. Rev. Stat. § 43-286 (Cum. Supp. 2014), governing placement of a juvenile at a youth rehabilitation and treatment center, does not require that every conceivable probation condition has been tried and failed, nor does it require repetition of ineffective measures or the provision of services that have already proved to be unsuccessful.

- 806 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF KYLIE P.
Cite as 23 Neb. App. 805

5. ____: ____. The record must establish that all levels of probation and options for community-based services have been thoroughly considered before the court may commit a juvenile to a youth rehabilitation and treatment center.

Appeal from the Separate Juvenile Court of Sarpy County: Lawrence D. Gendler, Judge. Reversed and remanded for further proceedings.

Patrick J. Boylan, Chief Deputy Sarpy County Public Defender, and Hannah McFall, Senior Certified Law Student, for appellant.

Carolyn A. Rothery, Deputy Sarpy County Attorney, and Andrew T. Erickson, Senior Certified Law Student, for appellee.

Irwin, Pirtle, and Riedmann, Judges.

Pirtle, Judge.

## INTRODUCTION

Kylie P., a minor, was committed to the Office of Juvenile Services for placement at the Youth Rehabilitation and Treatment Center (YRTC) in Geneva, Nebraska. She appeals, asserting the juvenile court erred by not following the statutory procedure for a commitment and erred in finding she had exhausted all levels of probation supervision and options for community-based services. For the reasons that follow, we reverse, and remand for further proceedings consistent with this opinion.

## BACKGROUND

On February 3, 2015, a juvenile petition was filed alleging multiple counts against Kylie, a child as described in Neb. Rev. Stat. § 43-247(1), (2), or (4) (Cum. Supp. 2014). The allegations included theft by shoplifting; violation of a city curfew; truancy; and being a wayward, habitually disobedient, or uncontrollable child.

On February 23, 2015, Kylie appeared for her arraignment in the separate juvenile court of Sarpy County, Nebraska, and was advised of her rights. She agreed to a bond contract and a mental health evaluation with the understanding that she was being placed on a supervisory status with the juvenile probation office.

At a review hearing on March 2, 2015, probation officer CJ Zimmerer submitted a supervision summary to the court. The summary described Kylie as uncooperative and argumentative, and stated that it was clear she was not going to abide by the conditions of the bond contract, including curfew, school attendance, and making progress in her school courses. The summary stated that Kylie admitted to having a "mental health affliction," but that she was not taking the medications prescribed to her. Instead, Zimmerer stated that it appeared Kylie was self-medicating with marijuana. Zimmerer reported that Kylie did not attend the sessions she was scheduled to at an alternative education program. Zimmerer explored other options, but "SCEP or the Daily Reporting Center" were not available at that time because each program had a waiting list. The summary stated, "Kylie has completely disregarded major portions of the bond contract, and shows no signs of changing her behaviors. This officer lacks the sufficient power to sanction Kylie to address the issues that are occurring."

A supplemental juvenile petition was filed on March 13, 2015, alleging an additional count of possession of marijuana, 1 ounce or less. The factual basis for this count was that friends brought the drug into Kylie's home and that they were preparing to use it when a court officer made an unannounced visit.

Kylie's attorney filed a motion for hearing on April 3, 2015, and a hearing took place on April 7. A memorandum prepared by the Sarpy County sheriff's office, Juvenile Justice Center, noted that Kylie had been placed on "lockdown" because she had not complied with the Juvenile Justice Center's "CARE" program, a structured supervision program. Zimmerer

- 808 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF KYLIE P.
Cite as 23 Neb. App. 805

indicated that Kylie's efforts in school had improved, but that she felt "trapped" and anxious when wearing an ankle monitor used by the CARE program. The court vacated the CARE program and ordered Kylie to be placed on "tracker services" under the supervision of the juvenile probation office, which allowed her to be tracked and supervised without a monitor attached to her.

An application for a capias arrest warrant was submitted on April 23, 2015, because Kylie had run from her home. On April 27, Kylie's mother indicated her belief that it would be best if Kylie did not return to her home.

On May 4, 2015, the juvenile court reviewed Kylie's placement, per her request. On May 15, Kylie sought permission for individual therapy because she was having difficulty with the group setting of her drug treatment program. The court authorized "applications for placement, including shelter care."

On May 29, 2015, placement was discussed again, including possible group homes, foster care, and independent living. The court entertained the option to place Kylie with her grandparents in Mead, Nebraska, and scheduled a disposition hearing on June 4 to provide time to investigate the placement options.

On June 4, 2015, per an agreement between the parties, the court placed Kylie in the custody of her paternal grandparents subject to the continued supervision by probation. Arrangements had to be made for school, drug testing, and monitoring, because the grandparents lived outside of Sarpy County.

On June 24, 2015, the State filed a motion for expedited hearing, because Kylie had violated the terms of her placement. An application was filed for a capias arrest warrant on June 29, because Kylie left her home and had removed her electronic monitor tracking device.

At a hearing held on July 2, 2015, the court found that all efforts for probation and placement had been exhausted. The

court reviewed Kylie's history, specifically her lack of success in the CARE program, the unsuccessful placements with her mother and paternal grandparents, and the necessity to issue a capias arrest warrant twice in a short period of time. The court found that probation was "no longer an option." Kylie requested to be released and unsuccessfully terminated from her probation. Instead, the court ordered Kylie to be placed on intensive supervision probation and committed to the Office of Juvenile Services for placement at the YRTC in Geneva.

## ASSIGNMENTS OF ERROR

Kylie asserts the juvenile court erred in committing her to YRTC in Geneva because the statutory procedure for making such a commitment was not followed. She also asserts her commitment was in error because all levels of probation supervision and options for community-based services had not been exhausted.

## STANDARD OF REVIEW

[1,2] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Nedhal A.*, 289 Neb. 711, 856 N.W.2d 565 (2014). Statutory interpretation is a question of law, which we resolve independently of the trial court. *Id.*

## ANALYSIS

Kylie asserts the juvenile court erred in committing her to YRTC because the statutory procedure set forth in Neb. Rev. Stat. § 43-286 (Cum. Supp. 2014) was not followed. At all times relevant to this case, § 43-286(1)(b)(ii) applied to all juveniles committed to the Office of Juvenile Services for placement at the YRTC on or after July 1, 2013. Section 43-286(1)(b)(ii) provides:

When it is alleged that the juvenile has exhausted all levels of probation supervision and options for

- 810 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF KYLIE P.
Cite as 23 Neb. App. 805

community-based services and section 43-251.01 has been satisfied, a motion for commitment to a youth rehabilitation and treatment center may be filed and proceedings held as follows:

(A) The motion shall set forth specific factual allegations that support the motion and a copy of such motion shall be served on all persons required to be served by sections 43-262 and 43-267; and

(B) The juvenile shall be entitled to a hearing before the court to determine the validity of the allegations. At such hearing the burden is upon the state by a preponderance of the evidence to show that:

(I) All levels of probation supervision have been exhausted;

(II) All options for community-based services have been exhausted; and

(III) Placement at a youth rehabilitation and treatment center is a matter of immediate and urgent necessity for the protection of the juvenile or the person or property of another or if it appears that such juvenile is likely to flee the jurisdiction of the court.

[3,4] In *In re Interest of Nedhal A., supra*, the Nebraska Supreme Court considered the question of what is required to "exhaust" all levels of probation supervision and options for community-based services in the context of § 43-286. The court found that the Legislature intended the placement of a juvenile at YRTC to be a "last resort" and concluded that "before a juvenile is placed in YRTC, the Office of Probation Administration must review and consider thoroughly what would be a reliable alternative to commitment at YRTC." *In re Interest of Nedhal A.*, 289 Neb. at 715, 716, 856 N.W.2d at 569. The court determined that upon a review of the juvenile's file and record, the Office of Probation Administration "shall provide the court with a report stating whether any such untried conditions of probation or community-based services have a reasonable probability for success or that all levels of

- 811 -

Decisions of the Nebraska Court of Appeals
23 Nebraska Appellate Reports
IN RE INTEREST OF KYLIE P.
Cite as 23 Neb. App. 805

probation and options for community-based services have been studied thoroughly and that none are feasible." *Id.* at 716, 856 N.W.2d at 569. The court noted this was not meant to imply that "every conceivable probation condition has been tried and failed" or that the statute requires repetition of ineffective measures or the provision of services that have already proved to be unsuccessful. *Id.*

In *In re Interest of Nedhal A.*, 289 Neb. 711, 717, 856 N.W.2d 565, 569 (2014), the Nebraska Supreme Court also stated, "In its determination whether all levels of probation supervision had been exhausted, the juvenile court should have required a review by the Office of Probation Administration concerning what levels of probation and options for community-based services, if any, could have been used in [the juvenile's] case." The Supreme Court held that the procedure followed in that case did not conform to the requirements of § 43-286 and that without a report, the court could not determine which possible probationary conditions, if any, could be successful. The Supreme Court concluded that "[a] review by the Office of Probation Administration may determine that there are no less restrictive alternatives to confinement at YRTC, but until this has been established, all levels of probation pursuant to § 43-286 have not been exhausted." *In re Interest of Nedhal A.*, 289 Neb. at 717, 856 N.W.2d at 570.

In this case, Kylie was subjected to multiple levels of probation supervision and community-based services, and although she made sporadic progress, none were successful. It is not clear from the decision in *In re Interest of Nedhal A., supra*, whether the report from probation must be written or whether it may be orally presented to the court. What is clear, however, is that in this case there was no specific motion for commitment or report of any kind presented by the Office of Probation Administration stating whether any "untried conditions of probation or community-based services have a reasonable possibility for success or that all levels of probation and options for community-based services have been studied

- 812 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF KYLIE P.
Cite as 23 Neb. App. 805

thoroughly and that none are feasible." See *id.* at 716, 856 N.W.2d at 569.

An individual from the Office of Probation Administration was present at each of the hearings and discussed Kylie's progress, but there was no written or oral recommendation specifically requesting commitment to YRTC, or a representation that Kylie had exhausted the options which were less restrictive than commitment to YRTC. The only written report that probation submitted to the court, and is included in the record before us, is a supervision summary dated February 27, 2015. The report noted that Kylie was not cooperative with the programs in place, but it makes no reference to other options which may have been available and makes no specific recommendation regarding the disposition of Kylie's case.

At the hearing on May 8, 2015, the court ordered a predisposition report from probation. Probation officer Zimmerer was present at the hearing on May 27 and indicated a report was "in the process of being completed," but there is no indication that it was provided to the court and it is not included in the record before us. On May 29, Zimmerer stated that applications for group homes, foster homes, and independent living were being submitted and that interviews with two group home programs were possible. At that time, Zimmerer recommended that Kylie be detained until "we can figure out a solid option" and noted that placement with Kylie's paternal grandparents was a possibility.

[5] The court set forth the case history at the hearing on July 2, 2015, and ultimately determined that Kylie had "run out of options." It is evident that multiple probationary conditions and community-based services had been unsuccessful. However, the Nebraska Supreme Court has held that "the record must establish that all levels of probation and options for community-based services have been thoroughly considered before the court may commit [the juvenile] to YRTC." See *In re Interest of Nedhal A.*, 289 Neb. 711, 717, 856 N.W.2d 565, 570 (2014). There was no report from the Office of

- 813 -

DECISIONS OF THE NEBRASKA COURT OF APPEALS
23 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF KYLIE P.
Cite as 23 Neb. App. 805

Probation Administration detailing whether any further services were available to Kylie or were likely to be successful. Accordingly, we find that the juvenile court erred in determining all levels of supervision and options for community-based services had been exhausted and that it was an error to commit Kylie to YRTC at that time.

Because we conclude that the juvenile court erred in committing Kylie to YRTC at the July 2, 2015, hearing, we do not reach her remaining assertion that the court erred in finding that the State met its burden of proof to show that commitment to YRTC was necessary. See *Facilities Cost Mgmt. Group v. Otoe Cty. Sch. Dist.*, 291 Neb. 642, 868 N.W.2d 67 (2015) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

## CONCLUSION

For the reasons stated above, we reverse the judgment of the juvenile court placing Kylie at YRTC and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.