IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

IN RE INTEREST OF HASSAN L.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF HASSAN L., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

HASSAN L., APPELLANT.

Filed March 21, 2017.    No. A-16-787.

Appeal from the Separate Juvenile Court of Douglas County: ELIZABETH CRNKOVICH, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Thomas C. Riley, Douglas County Public Defender, and Melinda S. Currans for appellant.

Donald W. Kleine, Douglas County Attorney, and Dwight Artis for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

Hassan L. appeals from the order of the separate juvenile court of Douglas County revoking his probation and ordering his commitment at a youth rehabilitation and treatment center (YRTC). Because we find that the order of commitment violated Hassan's due process rights, we affirm in part, and in part reverse and remand for further proceedings.

BACKGROUND

Hassan was born in October 1998. In June 2015, Hassan was adjudicated under Neb. Rev. Stat. § 43-247(1) (Cum. Supp. 2014), based on his admission to a juvenile petition alleging he possessed drug paraphernalia in violation of Neb. Rev. Stat. § 28-441 (Reissue 2016). Pursuant to a disposition order filed in August, Hassan was placed on probation with various terms and conditions.

Hassan's subsequent behaviors and actions required several court orders and placement changes. Between September 2015 and May 2016, the following occurred: September 10, 2015, detention hearing (Hassan ordered to be detained at the Douglas County Youth Center (DCYC)); probation revoked September 16 (Hassan to be placed in shelter care and probation officer to make application for group home placement); October 27 disposition hearing on motion to revoke probation (November 5 order that Hassan to be placed at Boys Town); capias issued November 16 (according to November 17 order canceling the capias, Hassan "[r]an from Boys Town"); November 17 detention hearing (Hassan to be transferred from DCYC to Boys Town Enhanced Shelter once available); December 14 detention hearing (Hassan ordered to be detained at DCYC and then transferred to Omaha Home for Boys); capias issued May 17, 2016 (according to May 18 order canceling the capias, Hassan "[r]an from Omaha Home for Boys"); and May 18 detention hearing (Hassan ordered to be detained at DCYC).

On May 26, 2016, "the parties" stipulated to placement with a treatment group home, and the court ordered such placement as arranged by the Office of Probation Administration; Hassan was ordered to remain detained at DCYC until further order of the court. On June 2, the juvenile court entered a placement order finding that Hassan should be released from DCYC and placed at "Journey[]s"; Hassan was ordered to fully participate in any treatment programs at Journeys and not act in a way to cause himself to be unsuccessfully discharged. In its detention order filed on June 16, the court found that Hassan had been terminated unsuccessfully from Journeys and ordered him to be detained at DCYC.

On June 17, 2016, the State filed a motion to revoke Hassan's probation for violating an order of the court, namely his unsuccessful discharge from Journeys.

A hearing on the motion to revoke probation was held on July 21, 2016. Hassan was present and represented by counsel. We recount the details of the hearing as follows.

After being informed of his rights (i.e. the right to a more formal hearing where the State would have to prove the violation, the right to confront witnesses, the right to have witnesses testify in his behalf, the right to be represented by a lawyer, and the right to remain silent), Hassan admitted that he was unsuccessfully discharged from his court-ordered placement. The juvenile court informed Hassan that if his probation was revoked, he "could be again placed on probation or in a group home or be committed to the [YRTC] in Kearney[.]" Hassan stated he understood, and acknowledged that he admitted to the violation freely and voluntarily.

The State then provided a factual basis as follows: Hassan was ordered to reside at Journeys' residential treatment facility, and on June 15, 2016, he was unsuccessfully discharged from that facility.

The State offered exhibit 18, the discharge summary from Journeys, which was received without objection. The discharge summary states that Hassan arrived in treatment on June 8, 2016. On June 11, he was overheard talking to peers about "pistol whipping a bitch" and "running a train." He was redirected for this, but struggled to see why the comments were harmful. The section labeled "reason for discharge," states as follows:

> Hassan was discharged from treatment and detained for not following his court order. Reasons for discharge included threatening staff by saying "wait until you are on your off time and I am going to get you . . . you are a little pussy and I will beat the shit out

of you. Approximately 15 minutes after threatening staff, Hassan aggressively entered the classroom by slamming open the closed door, cursing and screaming, and standing in close proximity to the staff that he just threatened. All of the other clients were in the classroom at this time. Hassan engaged in eye contact and dismissed the direction to leave the room stating "ya whatever[.]"[] He was directed to leave the room at least three more times which he ignored. Hassan stood over staff, who was sitting in a chair, and repeatedly called him names and threatened to "get" him. He continued to curse at staff and point his finger within inches of staff's face. 911 was called, and he was removed from treatment by police officers.

The section labeled "prognosis/follow-up/recommendation," states that "[b]ecause he is a flight risk, in the pre-contemplation stage of change, and has high criminogenic needs, a secure, structured residential facility that has a strong behavioral modification component . . . is being recommended."

The juvenile court: accepted Hassan's admission; found there was a factual basis for filing the motion to revoke probation; found the admission was freely, voluntarily, and knowingly entered; found Hassan did violate the terms and conditions of his probation as set out in the motion; and revoked Hassan's probation.

The juvenile court then asked Lisa Maryland from "State Probation" if she had a recommendation. Maryland stated:

Probation's recommendation is YRTC placement at this point. We've exhausted group home placement, treatment group home placement, shelters. He's had a co-occurring and a psychiatric eval. Services he's had are: he's been on EM. He's been on tracking. He's had IOP. He's had enhanced outpatient, medication management, and he's had drug testing. And he was only at Journeys about eight days before he was -- or seven days before he was unsuccessfully discharged. Therefore, lower level of cares aren't working at this point.

The State noted that the discharge from Journeys lists Hassan as a flight risk, says he has "high criminogenic needs," and "needs a program that is secure and structured." The State asked that applications be made to "Canyon State."

Hassan's counsel informed the court that Hassan felt like the allegations were "blown out of proportion" and that he did not act "nearly as bad" as Journeys said he did. Hassan felt like Journeys did not try to work with him, but that he wanted to be there and wanted to work with the program. Counsel felt that Journeys did not give Hassan "enough of a chance." Counsel did not think "Kearney [was] appropriate for Hassan at this point," and said he would like to be "considered to return home on electronic monitor." Hassan was "almost 18," and would like to help care for his "very ill" grandmother. He also wanted to take anger management classes, counseling, and "get into school at Accelere." Counsel thought Hassan would be potentially better off at Canyon State than YRTC in Kearney. Hassan spoke in his own behalf, saying that he did not want to leave Journeys and did not expect to be discharged.

The juvenile court noted that "this is the fourth motion to revoke . . . [in] well, about a year." The juvenile court "agree[d] with those who do not think YRTC is of any benefit," but said "we have already gone through several placements."

In its order filed on July 21, 2016, the juvenile court found: Hassan admitted the allegations in the motion to revoke probation; the allegations in the motion to revoke probation were true; that the motion to revoke should be sustained; and the probation order should be revoked. The juvenile court ordered that Hassan's probation was revoked. However, the juvenile court continued by finding:

> . . . .
>
> 5. That all levels of probation supervision and options for community based services have been exhausted and placement of [Hassan] is a matter of immediate and urgent necessity for the protection of [Hassan] or the person or property of another or it appears that [Hassan] is likely to flee the jurisdiction of the court;
>
> 6. . . . [I]t appears commitment to the Office of Juvenile Services for placement at the [YRTC] at Kearney[,] Nebraska is necessary for the protection and health and safety of [Hassan] and society[.]

The juvenile court then ordered that Hassan be committed to the custody of the Office of Juvenile Services (OJS) for placement at YRTC at Kearney, and also placed him on intensive supervised probation. Hassan appeals.

ASSIGNMENTS OF ERROR

Hassan assigns: (1) he was denied due process because the State did not file a commitment motion and the juvenile court failed to satisfy the demands of Neb. Rev. Stat. § 43-286(1)(b)(ii) (Reissue 2016) before ordering his commitment; (2) the juvenile court erred in finding that all levels of probation supervision and all options for community-based services were exhausted because the Office of Probation Administration failed to submit a report to the court; and (3) the juvenile court erred in finding that the State demonstrated by a preponderance of the evidence that his placement at the YRTC was a matter of immediate and urgent necessity or that he was likely to flee the jurisdiction of the court.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Alan L.*, 294 Neb. 261, 882 N.W.2d 682 (2016).

Whether the procedures given an individual comport with constitutional requirements for procedural due process presents a question of law. *Id*. And an appellate court independently reviews questions of law decided by a lower court. *Id*.

ANALYSIS

In his brief, Hassan argues that the juvenile court violated his due process rights by committing him to a YRTC when the statutory procedure set forth in § 43-286(1)(b)(ii) was not

followed. The State agrees with Hassan and requests that we reverse the decision of the juvenile court and remand for further proceedings.

Section 43-286(1)(b) states in relevant part as follows:

. . . .

(ii) This subdivision applies to all juveniles committed to the Office of Juvenile Services for placement at a youth rehabilitation and treatment center on or after July 1, 2013.

When it is alleged that the juvenile has exhausted all levels of probation supervision and options for community-based services and section 43-251.01 has been satisfied, *a motion for commitment to a youth rehabilitation and treatment center may be filed and proceedings held as follows*: (A) The *motion shall set forth specific factual allegations* that support the motion and *a copy of such motion shall be served on all persons* required to be served by sections 43-262 to 43-267; and (B) The *juvenile shall be entitled to a hearing before the court to determine the validity of the allegations*. At such hearing the burden is upon the state by a preponderance of the evidence to show that: (I) All levels of probation supervision have been exhausted; (II) All options for community-based services have been exhausted; and (III) Placement at a youth rehabilitation and treatment center is a matter of immediate and urgent necessity for the protection of the juvenile or the person or property of another or if it appears that such juvenile is likely to flee the jurisdiction of the court.

After the hearing, the court may commit such juvenile to the Office of Juvenile Services for placement at a youth rehabilitation and treatment center as a condition of an order of intensive supervised probation. . . .

(Emphasis supplied.)

Hassan contends that "the [juvenile] court's order for [Hassan] to be placed at YRTC was improper because (1) the State never filed a commitment motion and (2) the court never determined the validity of the factual allegations necessary for commitment." Brief for appellant at 10. "Given that the State did not file a commitment motion setting out the specific factual allegations, [Hassan] could not challenge the validity of the allegations because they were entirely unknown to [him] and his counsel"; Hassan was denied timely notice. *Id*. Accordingly, "[a]bsent the required motion and either an independent or concurrent hearing on the allegations . . . the court abridged [Hassan's] procedural due process rights." *Id*. at 12.

In its brief, the State agrees that the requirements of § 43-286(1)(b)(ii) were not satisfied. The State asserts that its recommendation was that applications be filed for Canyon State. The State did not recommend YRTC placement for Hassan, and "[f]or that reason, the State did not file a commitment motion, did not request a hearing for a commitment motion, and no hearing on the matter was held." Brief for appellee at 6. The State agrees that "[d]ue to the fact that the procedural requirements set forth by . . . § 43-286 were unsatisfied, the court's commitment of [Hassan] to OJS for placement at YRTC was erroneous." *Id*. at 7.

In deciding this case, we find the Nebraska Supreme Court's recent decision in *In re Interest of Alan L.*, 294 Neb. 261, 882 N.W.2d 682 (2016), helpful. In that case, Alan was on probation. The State filed a motion to commit Alan to a YRTC solely for Alan's failure to comply

with the terms of his probation. The State did not file a separate motion to revoke Alan's probation. After a hearing, the juvenile court committed Alan to OJS for placement at a YRTC. After an extensive analysis of § 43-286 and its recent amendments, the Nebraska Supreme Court said:

> It is true that the State did not comply with our holding that it must move to revoke a juvenile's probation when it claims that a change in the disposition is required for probation violations. *And we emphasize that prospectively, a revocation motion is concurrently required even if the State is seeking a juvenile's commitment to OJS for probation violations.* But we have not previously held this.

*In re Interest of Alan L.*, 294 Neb. at 275-76, 882 N.W.2d at 692 (emphasis supplied). The Nebraska Supreme Court noted that the State's motion did put Alan on notice that it was seeking a commitment to OJS because of his probation violations. It further noted that Alan did not contend that he did not have notice of its claim and did not show that the State denied him any protections that he would have received had the State filed a revocation motion. Accordingly, the court concluded that Alan was not denied procedural due process rights at the commitment hearing.

Consistent with § 43-286(1)(b)(ii), the State is required to file a commitment motion and a juvenile court is to conduct a hearing on that motion before the court may commit a juvenile to the OJS for placement at a YRTC. See, also, *In re Interest of Alan L., supra*. Before 2013, a juvenile court had discretion in a disposition order to commit a juvenile to OJS for placement at a YRTC. See *id*. However, statutory amendments in 2013 and 2014 imposed new conditions before a juvenile could be committed to OJS for placement at a YRTC; "the Legislature intended to make a juvenile's placement at a YRTC the placement of last resort." *Id*. at 271, 882 N.W.2d at 690. Although *In re Interest of Alan L.* dealt with a situation in which the State filed a motion to commit but not a motion to revoke probation (the opposite of what occurred in the instant case), its holding remains applicable here. *In re Interest of Alan L.* makes it clear that the Legislature "amended § 43-286 to require the State to file a commitment motion and a juvenile court to conduct a hearing on that motion before the court could commit a juvenile to OJS for placement at a YRTC." *Id*. at 270, 882 N.W.2d at 689. No commitment motion was filed in this case.

Additionally, the State's motion to revoke probation did not put Hassan on notice that commitment to a YRTC was a possibility. As noted by the State, it was not seeking commitment either in its motion or at the hearing. Commitment was the recommendation of probation and was ordered by the court sua sponte. Because Hassan was not given notice that commitment would be at issue, or a meaningful opportunity to be heard on that matter, his procedural due process rights were denied. See, generally, *State v. Norman*, 282 Neb. 990, 808 N.W.2d 48 (2012) (due process requires that parties at risk of deprivation of liberty interests be provided adequate notice and opportunity to be heard appropriate to nature of proceeding and character of rights which may be affected by it).

Our determination that Hassan's due process rights were denied for lack of notice and opportunity to be heard is dispositive of this appeal. Therefore, we need not address Hassan's remaining assignments of error regarding probation's failure to submit a report and the sufficiency of the evidence that placement at YRTC was necessary. See *In re Interest of Darryn C.*, 295 Neb. 358, 888 N.W.2d 169 (2016) (appellate court not obligated to engage in analysis not necessary to

adjudicate case and controversy before it). However, to the extent that the issues come up again on remand, we would point to *In re Interest of Nedhal A.*, 289 Neb. 711, 856 N.W.2d 565 (2014), and *In re Interest of Kylie P.*, 23 Neb. App. 805, 877 N.W.2d 583 (2016), for guidance.

We note that Hassan does not challenge that portion of the juvenile court's order revoking his probation, and he affirmatively concedes that the revocation was proper. Brief for appellant at 9. Accordingly, we affirm that portion of the juvenile court's order revoking Hassan's probation. However, we reverse that part of the juvenile court's order committing Hassan to the custody of the OJS for placement at the YRTC in Kearney, and remand the matter for further proceedings.

## CONCLUSION

For the reasons stated above, we affirm that portion of the juvenile court's order revoking Hassan's probation. However, we reverse that part of the juvenile court's order committing Hassan to the custody of the OJS for placement at the YRTC in Kearney, and remand the matter for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.