Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/25/2018 09:08 AM CDT

In re Interest of Dana H., a child
under 18 years of age.
State of Nebraska, appellee,
v. Dana H., appellant.

___ N.W.2d ___

Filed March 2, 2018.    No. S-17-612.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings.
2. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.
3. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
4. **Final Orders: Appeal and Error.** Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), the three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered.
5. **Juvenile Courts: Final Orders: Appeal and Error.** A proceeding before a juvenile court is a "special proceeding" for appellate purposes.
6. **Final Orders: Words and Phrases: Appeal and Error.** A substantial right is an essential legal right, not a mere technical right. But, for purposes of appeal, it is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.
7. **Minors: Proof.** The exhaustion requirement of Neb. Rev. Stat. § 43-251.01(7)(a) (Reissue 2016) demands evidence establishing that

no other community-based resources have a reasonable possibility for success or that all options for community-based services have been thoroughly considered and none are feasible.

8. ____: ____. The requirement of Neb. Rev. Stat. § 43-251.01(7)(b) (Reissue 2016) of a significant risk of harm to a juvenile is satisfied by a showing of a reasonable likelihood that the juvenile will suffer a material or tangible detriment.

Appeal from the Separate Juvenile Court of Lancaster County: LINDA S. PORTER, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Mark D. Carraher for appellant.

Joe Kelly, Lancaster County Attorney, and Maureen E. Lamski for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

CASSEL, J.

## I. INTRODUCTION

Dana H. timely appeals from two interim juvenile court orders, one dictating an out-of-home placement and another continuing it. The appeal presents two issues. First, was it taken from a final order? It was, because the placement order substantially affected a substantial right for an indefinite duration. Second, did the placement orders comply with the statutory requirements of (1) exhaustion of "[a]ll available community-based resources"[1] and (2) "significant risk of harm to the juvenile or community"[2] from maintaining in-home placement? After interpreting the statute, we conclude the placement complied with both requirements. Therefore, we affirm.

---

[1] Neb. Rev. Stat. § 43-251.01(7)(a) (Reissue 2016).

[2] § 43-251.01(7)(b).

## II. BACKGROUND

In October 2014, the State filed a supplemental petition alleging that as a juvenile, Dana unlawfully possessed a switchblade knife in violation of a city ordinance. The separate juvenile court found the allegations to be true by proof beyond a reasonable doubt and determined that Dana was a juvenile as defined by Neb. Rev. Stat. § 43-247(1) (Supp. 2015). Dana unsuccessfully appealed his adjudication, and no disposition order was entered.[3]

While the appeal was pending, the State filed a second supplemental petition alleging that Dana was habitually truant from school. Dana entered a plea of no contest, and the separate juvenile court found the allegations to be true by proof beyond a reasonable doubt. Final disposition on the second supplemental petition was consolidated with disposition of the supplemental petition. The court continued the matter and entered interim orders.

The court entered numerous successive interim orders, continuing prior orders and requiring further in-home services to Dana and his parents, with whom he resided. After the in-home services proved ineffective, the court ordered placement at Omaha Home for Boys as soon as placement was available. It specifically found that reasonable efforts were made and all available community resources expended to maintain Dana in his home and that it would be contrary to Dana's welfare to remain in the home due to his refusal to attend school or cooperate with the offered in-home services. The juvenile court continued this interim order and continued the dispositional hearing.

Dana appealed, and we moved the case to our docket.[4]

---

[3] See *In re Interest of Dana H.*, No. A-15-246, 2015 WL 7733998 (Neb. App. Dec. 1, 2015) (selected for posting to court website).

[4] See Neb. Rev. Stat. § 24-1106(3) (Supp. 2017).

## III. ASSIGNMENTS OF ERROR

Dana assigns, restated, that the juvenile court erred when it ordered him to be removed from his family home when there was insufficient evidence that all community-based resources had been exhausted and that maintaining him in his family home presented a significant risk of harm to him or the community.

## IV. STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings.[5]

[2] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[6]

## V. ANALYSIS

### 1. Jurisdiction

[3] The State argues that the interim orders providing for placement of Dana in a group home were not final, appealable orders. In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[7]

Our opinion in *In re Interest of Zachary B.*[8] accurately sets forth the analysis for the finality of orders in juvenile court proceedings. And as discussed in that case, it is necessarily a fact intensive inquiry.

[4] Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), the three types of final orders which may be reviewed on appeal

---

[5] *In re Interest of Lilly S. & Vincent S.*, 298 Neb. 306, 903 N.W.2d 651 (2017).

[6] *In re Interest of Zachary B., ante* p. 187, ___ N.W.2d ___ (2018).

[7] *In re Interest of Becka P. et al.*, 296 Neb. 365, 894 N.W.2d 247 (2017).

[8] *In re Interest of Zachary B., supra* note 6.

are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered.[9] Here, only the second type could apply.

[5,6] A proceeding before a juvenile court is a "special proceeding" for appellate purposes.[10] And a substantial right is an essential legal right, not a mere technical right.[11] But, for purposes of appeal, it is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.[12]

Here, our analysis differs somewhat from the situation in *In re Interest of Zachary B.* There, because the juvenile was not residing with a parent, the juvenile court's interim order affected only a purely statutory right to remain in his home. Moreover, the order's effect upon the right was not substantial.[13] Here, the same statutory right applied. But because Dana was residing with his parents, a constitutionally protected right also applied.[14] And the situation here also differed in that the effect of the order on those rights was substantial.

In this regard, we are guided in our analysis by our decision in *In re Interest of Becka P. et al.*[15] In that case, we reviewed the language of a juvenile court's orders appointing an educational surrogate and the court's remarks on the record to find an appealable order where there was no limit on the duration or scope of the educational surrogate's appointment. Here, the

---

[9] *In re Interest of Becka P. et al., supra* note 7.

[10] *Id.*

[11] See *id.*

[12] See *In re Interest of Noah B. et al.*, 295 Neb. 764, 891 N.W.2d 109 (2017).

[13] See, § 43-251.01(7); *In re Interest of Zachary B., supra* note 6.

[14] See *In re Guardianship of D.J.*, 268 Neb. 239, 682 N.W.2d 238 (2004).

[15] *In re Interest of Becka P. et al., supra* note 7.

juvenile court's remarks likewise indicated no limit on the duration of the out-of-home placement.

Theoretically, the juvenile court could change its mind about placement upon entering a dispositional order. But the court stated that it wanted "to make sure that [Dana is] settled into the program before we enter final disposition." This demonstrated that it intended the order to be of indefinite duration and to be continued in the final disposition. Indeed, the court's record reveals a practice of simply continuing or modifying prior interim orders, by continuing the dispositional hearing 12 times over the course of a year before it entered the orders at issue.

Evidence of the average length of placements at the Omaha Home for Boys provides little help in our analysis. The record establishes that the average length of stay was anywhere between 6 to 14 months. Six months might suggest a mere temporary effect, but an out-of-home placement of 14 months would substantially affect Dana's right to reside in his family home with his parents. We cannot say that the order contemplated only a temporary, short-term placement.

Because the effect of the juvenile court's order authorizing placement with the Omaha Home for Boys appears to be of indefinite duration and significantly affects a substantial right, it was a final, appealable order under § 25-1902. We now proceed to consider the merits of the error assigned on appeal.

## 2. Merits

Dana assigns that the juvenile court erred in removing him from his family home. He argues that the relevant statutory requirements were not met, because there was insufficient evidence that all community-based resources had been exhausted and that maintaining him in his family home presented a significant risk of harm to him or the community. After a review of the statute and the record, we disagree.

(a) Exhaustion of All Available
Community-Based Resources

The key subsection provides:

A juvenile alleged to be a juvenile as described in subdivision (1), (2), (3)(b), or (4) of section 43-247 shall not be placed out of his or her home . . . unless:

(a) All available community-based resources have been exhausted to assist the juvenile and his or her family; and

(b) Maintaining the juvenile in the home presents a significant risk of harm to the juvenile or community.[16]

The interpretation of this particular statute is an issue of first impression. But in an earlier case,[17] we considered a similar statutory requirement. There, the statute allowed for the commitment of a juvenile to a youth rehabilitation and treatment center—a more restrictive placement than the one at issue here—only after the juvenile has exhausted "all levels of probation supervision and options for community-based services."[18]

This comparable requirement "[did] not imply that a juvenile court must ensure that every conceivable probationary condition has been tried and failed."[19] Instead, the statute required a careful review of the juvenile's file and record, after which the Office of Probation Administration must report "whether any such untried conditions of probation or community-based services have a reasonable possibility for success or that all levels of probation and options for community-based services have been studied thoroughly and that none are feasible."[20]

---

[16] § 43-251.01(7).

[17] *In re Interest of Nedhal A.*, 289 Neb. 711, 856 N.W.2d 565 (2014).

[18] Neb. Rev. Stat. § 43-286(1)(b)(ii) (Supp. 2013).

[19] *In re Interest of Nedhal A., supra* note 17, 289 Neb. at 716, 856 N.W.2d at 569.

[20] *Id.*

[7] We apply the same interpretation to the statute before us. The exhaustion requirement of § 43-251.01(7)(a) demands evidence establishing that no other community-based resources have a reasonable possibility for success or that all options for community-based services have been thoroughly considered and none are feasible. The evidence in the record satisfied this requirement.

The juvenile probation officer assigned to work with Dana testified that Dana had been under probation supervision for several years without improving his school attendance. The officer testified that Dana had not cooperated with "tracker services" or evening reporting services and had minimally cooperated with the provided intensive family preservation services. He testified that there were no other appropriate or necessary services available to address Dana's school attendance issues. And although Dana argues that there were other in-home community services available, the record demonstrates that similar services had not been successful.

In the same way as in the earlier case, we decline to interpret § 43-251.01(7) to require services that have already been proven to be unsuccessful. The record establishes that other options for community-based services were thoroughly considered but deemed inappropriate or unnecessary. Accordingly, we find that the available community-based resources were "exhausted" within the meaning of the statute.

### (b) Significant Risk of Harm

Regarding the second requirement, Dana argues that he did not pose a significant risk to the community or to himself and that his truancy did not amount to a significant risk of harm to himself. The State did not argue that Dana posed a significant risk of harm to the community. But we disagree with Dana's argument that his behavior posed no significant risk of harm to himself. He interprets "harm" too narrowly and disregards the juvenile court's authority and statutory duty to issue orders in the child's best interests.

[8] We understand "harm" to encompass not only physical injury and hurt, but also any "material or tangible detriment."[21] Thus, the requirement of § 43-251.01(7)(b) of a significant risk of harm to a juvenile is satisfied by a showing of a reasonable likelihood that the juvenile will suffer a material or tangible detriment. Here, the juvenile court found Dana to be at serious risk of harm and detriment due to his refusal to attend school and develop basic life skills while living in the family home. This finding is consistent with the public policy behind the compulsory education statutes[22] and the juvenile court's jurisdiction to intercede where a juvenile is habitually truant or otherwise has his or her educational needs neglected by a parent or guardian.[23]

Before ordering out-of-home placement, the juvenile court made the correct statutory findings. These findings were supported by the evidence. Upon our de novo review, we find no merit to Dana's arguments.

## VI. CONCLUSION

For the reasons set forth above, the orders of the juvenile court are affirmed.

AFFIRMED.

WRIGHT, J., not participating.

---

[21] Black's Law Dictionary 832 (10th ed. 2014) (defining "harm").

[22] See Neb. Rev. Stat. § 79-201 et seq. (Reissue 2014).

[23] See *In re Interest of Becka P. et al., supra* note 7 (finding juvenile court had statutory authority to appoint educational surrogate to direct education of children within meaning of § 43-247(3)(a)). See, also, *In re Interest of Laticia S.*, 21 Neb. App. 921, 844 N.W.2d 841 (2014) (finding juvenile at risk for harm and within meaning of child neglect statute due to missing school).