IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF ISAIAH M.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF ISAIAH M., A CHILD UNDER 18 YEARS OF AGE.


STATE OF NEBRASKA, APPELLEE,

V.

BRETT S., APPELLANT.


Filed September 11, 2018.    No. A-18-055.


Appeal from the Separate Juvenile Court of Douglas County: MATTHEW R. KAHLER, Judge. Appeal dismissed.

Barbara J. Prince for appellant.

No appearance for appellee.

Brady J. Hoekstra, guardian ad litem.


MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

Brett S. appeals the December 18, 2017, order of the separate juvenile court of Douglas County which denied his motion for placement of his minor child, Isaiah M., who had previously been adjudicated under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) based on faults or habits of his mother. Because the December 18 order was temporary in nature, it was not a final, appealable order. We therefore dismiss the appeal for lack of jurisdiction.

BACKGROUND

Brett is the father of Isaiah, born in May 2001. Isaiah's mother is Nicole M. Nicole also has four other children, but Brett is not the father of any of those children. Because Nicole and her other children are not part of this appeal, they will only be discussed as necessary.

Isaiah and his siblings were removed from Nicole's care in August 2017, due to concerns about Nicole's drug use and her leaving one of the children with an inappropriate caregiver. The State filed a petition alleging that Isaiah and his siblings were children within the meaning of § 43-247(3)(a) due to the faults or habits of Nicole. The children were placed in the temporary custody of the Nebraska Department of Health and Human Services (DHHS) for placement in foster care or other appropriate placement.

On October 23, 2017, Brett filed a motion for placement of Isaiah. Brett alleged that his paternity was established in 2006, the State had not filed any allegations against him, he was entitled to placement, and that it was in Isaiah's best interests to be placed with him.

On October 31, 2017, Isaiah and his siblings were adjudicated under § 43-247(3)(a) based on Nicole's no contest plea to the allegations in the petition regarding her use of alcohol and/or controlled substances and her failure to provide proper parental care, support, supervision, and/or protection for the children.

On December 5, 2017, a hearing was held on Brett's motion for placement. Brett offered into evidence a certified copy of a final order for support from 2006, and it was received without objection; the exhibit established that Brett was Isaiah's father. Brett's counsel argued that Brett is "a non-filed on parent," "we have established paternity," and "he is entitled to have placement of his child." Isaiah's guardian ad litem (GAL) objected to the placement date, stating, "There's a tentative placement date [December 27 or 28] that is set for transition from Foster Mom to Dad's house, and as of right now I'm objecting to that" because Isaiah's therapist said Isaiah and Brett should engage in family therapy to work out the issues they have between them before placement occurs. According to the GAL, "their first family therapy session is supposed to be December 11 [and] I just don't think that there's going to be enough sessions in order for them to be able to work out their issues." The State said it "would also like to see the transition period be extended" and it "echo[ed] the comments made by the [GAL]." Nicole objected to the motion for placement, claiming Brett "is not fit at this time to have placement" but would agree "down the line, after Isaiah had therapy and if the therapist recommends" placement.

The Court gave DHHS a chance to respond. DHHS said,

[T]here's no filing. We have no safety concerns at all. I do understand that perhaps when he was placed there previously it may not have been the happiest of situations for the child, but that's why we have set up family therapy so that they can work on that. And even after he's placed, they can continue to go to family therapy and work on those issues. And those are not safety issues; those are some emotional issues.

The court also asked Isaiah, who was present, if there was anything he had to say. Isaiah said,

I don't know. I just feel like the last time I lived with my dad, it was more of, like, not knowing what to do. Like, I was raised differently by my mom, and when I moved into

- 2 -

my dad's it was a whole different thing. He raised the boys different than I was raised. Like, I don't know how to say it -- like rules and stuff like that, which -- it wasn't -- it was -- I don't know because that sounds bad at the same time. But I don't know.

The court explained to Isaiah that the parties were suggesting that he and Brett have more time before he (Isaiah) goes home, and asked if Isiah had any "input on that or thoughts on that." Isaiah said, "Yeah. I'd like to, like extend it and go to more of the family therapy. I feel like me and him have a lot of hard feelings that we need to fix before . . . [.]" (Ellipses in original.)

The court acknowledged "the case law says that [Brett] should have placement" and that "he has a right, absolute right, to placement at this point" because "there's no filings" making allegations against him. However, the court said, "I do appreciate that the parties have discussed . . . a transition plan to go to the end of the month," but that the GAL's concern was that there may not be enough time; and even Isaiah wanted to take some more time. The court said it was going to order "that placement occur as soon as the therapist says the two of you are ready," but understood "that creates potential issues down the road." The court said it would set a "placement check" at the end of the month at which time it would "look to see if the parties have an update from the therapist to see if, A, are you [Isaiah] ready to go then or, B, is there some thought that you need X number of weeks before you would be ready to go forward with a transition plan."

In its order filed on December 18, 2017, the juvenile court denied the motion for placement "at this time." The matter was set for a "placement check" to be heard on December 28.

On January 16, 2018, Brett timely filed his notice of appeal regarding the court's December 18, 2017, order.

We note that in the interim period between the court's order filed on December 18, 2017, and Brett's notice of appeal filed on January 16, 2018, the "placement check" hearing was held on December 28, 2017. In its order filed that same day, the court stated that Isaiah was to participate in unsupervised visitation, to include overnight visits, with Brett, and that Isaiah shall continue to participate in family therapy with Brett. The "placement check" was "continued" to February 5, 2018.

## ASSIGNMENTS OF ERROR

Brett assigns that the juvenile court violated his due process rights and erred in denying his motion for placement.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Dana H.*, 299 Neb. 197, 907 N.W.2d 730 (2018).

A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *Id.*

## ANALYSIS

The GAL claims that the December 18, 2017, order, from which Brett appeals, was not a final order and therefore this court lacks jurisdiction. (The State waived filing a brief.)

- 3 -

In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015). For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken. *Id.*

Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), the three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered. *In re Interest of Dana H., supra*. Here, only the second type could apply.

A proceeding before a juvenile court is a special proceeding for appellate purposes. *Id.* Therefore, in order to determine whether the December 18, 2017, order is a final order, we must determine whether the order affected a substantial right. The determination of appealability in this case, as in other juvenile cases, is a fact-intensive inquiry. *In re Interest of Zachary B.*, 299 Neb. 187, 907 N.W.2d 311 (2018).

A substantial right is an essential legal right, not a mere technical right. *In re Interest of Dana H., supra*. And the Nebraska Supreme Court has recognized that the substantial right of a parent in juvenile proceedings is a parent's fundamental, constitutional right to raise his or her child. *In re Interest of Cassandra B. & Moira B.*, 290 Neb. 619, 861 N.W.2d 398 (2015). But, for purposes of appeal, it is not enough that the right itself be substantial; the effect of the order on that right must also be substantial. *In re Interest of Dana H., supra*. Whether the effect of an order is substantial depends on whether it affects with finality the rights of the parties in the subject matter. *In re Interest of Zachary B., supra*. See, also, *In re Interest of Darryn C.*, 295 Neb. 358, 888 N.W.2d 169 (2016) (substantial right affected if order affects subject matter of litigation, such as diminishing claim or defense that was available to appellant prior to order from which appeal taken). In juvenile court cases, whether an order affects a substantial right of a parent is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed. See *In re Interest of Becka P. et al.*, 296 Neb. 365, 894 N.W.2d 247 (2017). Orders which temporarily suspend a parent's custody, visitation, or education rights for a brief period of time do not affect a substantial right and are therefore not appealable. *Id.*

The GAL argues that the court's December 18, 2017, order denying Brett placement of Isaiah "at this time" and setting a check hearing for December 28, showed that the court's decision was not a final order because it was not permanently denying Brett placement of Isaiah, but wanted to allow Brett and Isaiah enough time to engage in family therapy to alleviate transition concerns. The GAL further argues that by setting a check hearing on December 28, there was "not a significant length of time that would disturb Brett's relationship with Isaiah," and the court was not permanently denying Brett placement of Isaiah. Brief for appellee at 9. In contrast, Brett argues that "[t]here was no statement by the court that the Motion for Placement would be continued, that the Court would receive additional evidence regarding the Motion for Placement, or that the Court would further consider the Motion at a subsequent date," therefore the words "at this time" reflect that the court made a final determination as to the Motion for Placement. Reply brief for appellant

at 2. Brett claims that if the December 18 order is not the final order as to his Motion for Placement, "there exists no other date certain at which time [his] Motion for Placement would be resolved." *Id.* at 3.

This case is analogous to *In re Interest of Darryn C., supra*, wherein Darryn had been adjudicated due to the faults or habits of his parents. The State subsequently moved to terminate their parental rights. Darryn's parents relinquished their parental rights to Darryn over to the child's paternal grandmother. The grandmother then filed for custody. After a hearing on the grandmother's motion for custody of Darryn, the juvenile court overruled the motion and further ordered that home studies be conducted on her two homes. The grandmother appealed, but the Nebraska Supreme Court determined there was not a final, appealable order; its analysis was based on § 25-1902(2) (order affecting substantial right made during special proceeding). The court said that the proper inquiry was whether the court's order overruling the grandmother's motion for custody clearly eliminated her ability to gain custody of Darryn. In its inquiry, the Supreme Court stated:

> Although at first glance the order here appears to affect [the grandmother's] right to custody, upon further inspection, it becomes clear that the order does not diminish [her] ability to obtain placement or custody. Instead, the order mandates that DHHS conduct a home study of [her] homes and sets a "Home Study Check" hearing to occur approximately 1 month later, which indicates that the court is still considering [the grandmother] for some type of placement and that the issue of custody will be disposed of within a reasonable amount of time. This finding is supported by the following statements from the bench:
>
> "The Motion for Custody is overruled. I am, however, going to order a couple of things to occur: [DHHS] and [Nebraska Families Collaborative] shall conduct a home study on the home of [the grandmother] . . . based on what I've heard here today.
>
> "It's simply not in the child's best interest to uproot him, certainly at this point in time and maybe not ever. I don't know. Okay? But as we sit here today, parental rights are intact."
>
> These comments clearly indicate that the court has not completely disposed of the custody issue and that [the grandmother] may still gain custody.

*In re Interest of Darryn C.*, 295 Neb. at 367-68, 888 N.W.2d at 176-77. The court dismissed the appeal for lack of jurisdiction because the juvenile court's order was not a final, appealable order. Cf. *In re Interest of Becka P. et al., supra* (concluding that order was not temporary and therefore was appealable, because neither language of order nor court's remarks on record denoted temporary interruption of parents' rights).

In the instant case, the court's December 18, 2017, order denied Brett's motion for placement "at this time" and set a "placement check" to be heard 10 days later. This, along with the court's statements from the bench -- that it was going to order "that placement occur as soon as the therapist says the two of you are ready," and that it wanted an update at the "placement check" at the end of the month -- indicates that the court was still considering Isaiah's placement with Brett and that the issue of placement would be disposed of within a reasonable amount of time. Thus, the order and the associated comments at the hearing make clear that the juvenile court intended the December 18 order to be temporary in nature and that it planned to revisit the issue

of placement for Isaiah at the December 28 "placement check." Because the December 18 order did not completely dispose of the placement issue and was only temporary in nature, it did not substantially affect Brett's right to placement of his son, and it was not a final order under § 25-1902(2).

We recognize that if the juvenile court continues to hold off on placing Isaiah with Brett after future hearings and orders, there becomes a question of at what point the denial of placement would become a final, appealable order. We do not reach that issue, however, because Brett specifically stated in his notice of appeal that he is appealing the December 18, 2017, order, which we have determined is not a final, appealable order. See *In re Interest of Carmelo G.*, 296 Neb. 805, 896 N.W.2d 902 (2017) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

## CONCLUSION

Because the December 18, 2017, order is not a final order, we do not have jurisdiction of this appeal. Accordingly, we dismiss the appeal for lack of jurisdiction.

APPEAL DISMISSED.