In re Interest of Nedhal A., a child
under 18 years of age.
State of Nebraska, appellee, v. Nedhal A., appellant.
___ N.W.2d ___

Filed December 12, 2014.   No. S-14-217.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.
3. ____: ____. When possible, an appellate court will try to avoid a statutory construction that would lead to an absurd result.

Appeal from the Separate Juvenile Court of Lancaster County: Toni G. Thorson, Judge. Reversed and remanded for further proceedings.

Dennis R. Keefe, Lancaster County Public Defender, and Matthew Meyerle for appellant.

Lory Pasold, Deputy Lancaster County Attorney, for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Wright, J.
### NATURE OF CASE
Nedhal A. (Appellant) was charged with criminal mischief and disturbing the peace while residing at Cedars Teaching, Learning, & Connecting group home (Cedars Home). While the charges were pending final disposition, Appellant went "on [the] run" several times at other placements. Although another group home accepted Appellant at its location in Omaha, Nebraska, the juvenile court ordered intensive supervised probation at the Youth Rehabilitation and Treatment Center (YRTC) in Geneva, Nebraska, pursuant to Neb. Rev. Stat. § 43-286(1)(b)(ii) (Supp. 2013). The court found that all levels of probation supervision and options for community-based services had been exhausted and further determined that placing Appellant at YRTC was a matter of immediate and urgent necessity.

This case involves the interpretation of § 43-286(1)(b)(ii). We must decide in the context of this statute what constitutes the exhaustion of "all levels of probation supervision and options for community-based services" before a court may order a juvenile committed to a YRTC. See *id*. For the reasons stated herein, we reverse the judgment of the juvenile court and remand the cause for further proceedings.

## SCOPE OF REVIEW

[1,2] We review juvenile cases de novo on the record and reach our conclusions independently of the juvenile court's findings. *In re Interest of Kodi L.*, 287 Neb. 35, 840 N.W.2d 538 (2013). Statutory interpretation is a question of law, which we resolve independently of the trial court. *In re Interest of Marcella G.*, 287 Neb. 566, 847 N.W.2d 276 (2014).

## FACTS

On September 19, 2013, a petition was filed in the Lancaster County Separate Juvenile Court alleging Appellant had committed criminal mischief causing damage less than $200 and had disturbed the peace. The petition alleged that Appellant had damaged the property of Cedars Home on June 6 while she was a participant in its program. The petition further alleged that she had knowingly disturbed the peace at a high school in Lincoln in 2013.

On December 10, 2013, Appellant appeared before the juvenile court and admitted to the charge of criminal mischief in exchange for a dismissal of the charge of disturbing the peace. Upon her admission, the court set disposition for February 4, 2014.

Following her discharge from Cedars Home, Appellant resided at Youth Care and Beyond, a group home in Omaha. On Friday, December 20, 2013, the Nebraska Department of Health and Human Services (DHHS) provided transportation for Appellant to visit her family. During the course of that visit, Appellant left and did not return. On December 25, Appellant was picked up by the Lincoln Police Department. DHHS arranged for Appellant to be returned to Youth Care and Beyond on December 27.

On December 28, 2013, Youth Care and Beyond reported that Appellant left the group home around 5:25 p.m., but she was returned by the Omaha Police Department around 9 p.m. Youth Care and Beyond further indicated that Appellant refused to follow instructions in reporting her whereabouts in order to take medications on both December 27 and 28. On December 29, Appellant again left Youth Care and Beyond. On January 9, 2014, while Appellant was missing, the Lancaster County Attorney filed a motion for a detention order because Appellant had left her placement at Youth Care and Beyond.

Appellant was not located by Omaha police until January 15, 2014. Once Appellant was located, she was transported to the Douglas County Youth Center and later to the Lancaster County Youth Services Center. Appellant was then discharged from Youth Care and Beyond.

A detention hearing was held on January 27, 2014, to determine whether a less restrictive alternative was available for Appellant. At the hearing, the parties produced testimony and evidence pertaining to Appellant's family and behavioral background. The evidence included testimony from Appellant's caseworker that Appellant had previously been placed at Cedars Home in Lincoln, Nebraska. Appellant had unsuccessful placements in foster homes and would leave those homes without reporting her whereabouts or activities.

Child and Family Services specialist Angela Miles, who had been Appellant's DHHS caseworker for the 3 years prior to the detainment hearing, testified that Appellant told her that while she was on the run, Appellant and her 17-year-old boyfriend stayed at a friend's parents' house. Miles indicated that Appellant associated with unapproved individuals and placed herself in potentially dangerous situations. At the conclusion of the detention hearing, the juvenile court determined that there was no less restrictive alternative to continued placement at the Lancaster County Youth Services Center and ordered a psychological evaluation of Appellant.

At the disposition hearing on the criminal charges, Mark Hickson, a probation officer who completed Appellant's pre-disposition report, testified that this was Appellant's first

adjudicated law violation and that Appellant had never been subjected to conditions of liberty or other supervision. Hickson noted that Appellant had an extensive history of placements and services by DHHS, including at least 24 different placements. Hickson did not know whether Appellant had been subjected to electronic tracking or day reporting.

The juvenile court again heard testimony from Miles that after Youth Care and Beyond discharged Appellant, DHHS sent referrals to out-of-home placements that could meet Appellant's various placement history, behavioral problems, and educational and therapeutic needs. In response to the referral, Salvation Army Cares group home (Salvation Army Cares) informed DHHS that it would accept Appellant after reviewing Appellant's placement history, educational needs, and therapeutic needs. Salvation Army Cares offered a program similar to the program Appellant went through at Cedars Home. Miles testified that despite Appellant's acceptance into Salvation Army Cares, Miles believed a group home placement was inappropriate because of Appellant's history of running away from her placements.

Appellant argued that the evidence did not establish that she had exhausted all levels of probation supervision or options for community-based resources. Based on Appellant's psychological evaluation and behavioral history, the juvenile court found that intensive supervised probation was appropriate. It concluded that Appellant had exhausted all other levels of care available to the court within the meaning of § 43-286(1)(b)(ii) and ordered Appellant to be placed at YRTC, despite her acceptance into Salvation Army Cares.

## ASSIGNMENTS OF ERROR

Appellant assigns as error the following: (1) The juvenile court erred in placing Appellant on intensive supervised probation at YRTC, because placement on intensive supervised probation was contrary to the statutory requirements of § 43-286(1)(b)(ii), and (2) there was insufficient evidence for the juvenile court to find that all levels of probation supervision and options for community-based resources

had been exhausted prior to placement on intensive super-vised probation.

## ANALYSIS

[3] In reviewing questions of law arising under the Nebraska Juvenile Code, we review the cases de novo and reach con-clusions independently of the lower court's ruling. See *In re Interest of Marcella G.*, 287 Neb. 566, 847 N.W.2d 276 (2014). Statutory interpretation is a question of law, which we must resolve independently of the trial court. *In re Interest of Violet T.*, 286 Neb. 949, 840 N.W.2d 459 (2013). When possible, an appellate court will try to avoid a statutory construction that would lead to an absurd result. *In re Interest of Marcella G., supra*.

At all times relevant, § 43-286(1)(b)(ii) provided:

Unless prohibited by section 43-251.01, the court may commit such juvenile to the Office of Juvenile Services for placement at a youth rehabilitation and treatment center as a condition of an order of intensive super-vised probation *if all levels of probation supervision and options for community-based services have been exhausted and placement of such juvenile is a matter of immediate and urgent necessity for the protection of such juvenile or the person or property of another or if it appears that such juvenile is likely to flee the jurisdic-tion of the court.*

(Emphasis supplied.)

### Interpretation of § 43-286

The question presented is what is required to "exhaust" all levels of probation supervision and options for community-based services in the context of § 43-286. When 2013 Neb. Laws, L.B. 561, § 1, was introduced on January 23, 2013, the bill stated that one of its purposes was to "<u>prevent further penetration of such juveniles into the juvenile justice system</u>." (Similar language was included by the Legislature in Neb. Rev. Stat. § 43-4101 (Cum. Supp. 2014).)

Stated simply, the Legislature intended the placement of a juvenile at YRTC to be a last resort. The plain language of

§ 43-286 and the broader statutory scheme of the Nebraska Juvenile Code reinforce this interpretation. Merriam-Webster's Collegiate Dictionary 405 (10th ed. 2001) defines "exhaust" as "to develop (a subject) completely[;] to try out the whole number of <[*exhaust*]*ed* all the possibilities>." We use this definition in the case at bar.

Applying the principles of statutory interpretation, we conclude that § 43-286 requires that before a juvenile is placed in YRTC, the Office of Probation Administration must review and consider thoroughly what would be a reliable alternative to commitment at YRTC. Upon reviewing the juvenile's file and record, the Office of Probation Administration shall provide the court with a report stating whether any such untried conditions of probation or community-based services have a reasonable possibility for success or that all levels of probation and options for community-based services have been studied thoroughly and that none are feasible.

We do not imply that a juvenile court must ensure that every conceivable probationary condition has been tried and failed before it may place a juvenile at YRTC. Nor do we interpret § 43-286 to require that supervisory conditions of a juvenile previously classified as a neglect case under Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2013) must "start over" when the matter becomes a delinquency case and subject to the Office of Juvenile Services.

The review should consider the success or failure of prior supervisory conditions, even if the conditions were imposed by some other agency responsible for the child's care, such as DHHS. We decline to impose an interpretation of § 43-286 that would require repetition of ineffective measures or require the Office of Juvenile Services to provide services that have already been proved to be unsuccessful. The Legislature did not intend such a result.

## APPLICATION

In our application of § 43-286 to the present case, we find that Appellant's placement at YRTC was premature, because there had not been a thorough review of all levels of probation that could be applied. The offenses were Appellant's first

adjudicated law violations, and the Appellant had no prior involvement with the Office of Probation Administration. In its determination whether all levels of probation supervision had been exhausted, the juvenile court should have required a review by the Office of Probation Administration concerning what levels of probation and options for community-based services, if any, could be used in Appellant's case. The parties agree that Appellant has not been subject to any level of electronic monitoring or surveillance, nor has she been faced with the consequences of her subsequent action if she does not comply with the conditions of her probation.

We find it particularly important that the Office of Probation Administration review and report whether other less-restrictive alternatives to YRTC are available and feasible. Before Appellant's criminal activity, she was considered a neglected child and ward of the State under § 43-247(3)(a). The transition directly from a case under § 43-247(3)(a) to YRTC without a report from the Office of Probation Administration that all levels of probation and options for community-based service have been exhausted does not conform to the requirements of § 43-286. We cannot determine which possible probationary conditions, if any, could be successful. However, the record must establish that all levels of probation and options for community-based services have been thoroughly considered before the court may commit Appellant to YRTC.

A review by the Office of Probation Administration may determine that there are no less restrictive alternatives to confinement at YRTC, but until this has been established, all levels of probation pursuant to § 43-286 have not been exhausted.

## CONCLUSION

For the reasons stated above, we reverse the judgment of the juvenile court placing Appellant at YRTC and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.