IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


IN RE INTEREST OF MARCANTHONY A.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF MARCANTHONY A., A CHILD UNDER 18 YEARS OF AGE.


STATE OF NEBRASKA, APPELLEE,

V.

MARCANTHONY A., APPELLANT.


Filed October 9, 2018.    No. A-17-1325.


Appeal from the Separate Juvenile Court of Douglas County: MATTHEW R. KAHLER, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Katie L. Jadlowski for appellant.

No appearance for appellee.


PIRTLE, RIEDMANN, and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

MarcAnthony A. appeals from the Douglas County Separate Juvenile Court order revoking his probation and committing him to the Youth Rehabilitative Treatment Center (YRTC) at Kearney, Nebraska. He claims that the juvenile court erred in revoking his probation because certain mitigating circumstances were not taken into account. He also claims the court erred in committing him to the YRTC because statutory conditions, including exhausting all less restrictive options, were not met. We affirm.

- 1 -

STATEMENT OF FACTS

In September 2016, MarcAnthony, then 16 years old, pled guilty to two traffic-related misdemeanors relating to an incident in which he left the scene of an accident and operated a vehicle without an operator's license. He was sent to the Douglas County Youth Center (DCYC) until behavior and chemical dependency assessments could be completed. On October 11, the juvenile court placed MarcAnthony on 8 months' probation and released him to his mother's custody. The court ordered, among other things, that MarcAnthony abide by a probation contract which included numerous terms and conditions. Term seven provided, in part, that he was to "attend all regular sessions of educational programming without tardies or unexcused absences, complete all required projects/assignments and show good behavior at all times." Term nine provided that he was "not to display any type of inappropriate behavior at any time to include physical, verbal, or sexual aggression, which may be viewed as harmful to yourself or others."

On November 18, 2016, the State filed a motion to revoke MarcAnthony's probation; instead, he was placed in the Heartland Family Service Youth Links Shelter on November 22. MarcAnthony was "[u]nsuccessfully discharged" from that placement on December 14. On January 3, 2017, based upon the agreement of the parties, the juvenile court entered an order extending MarcAnthony's probation until October 9. The court further ordered, among other things, that the probation office locate a group home placement for MarcAnthony and that he immediately commence an intensive rehabilitation program. MarcAnthony was placed at Child Saving Institute on January 23. He was discharged on January 26 for verbally and physically aggressive behavior.

In May 2017, by order of the court, MarcAnthony was placed at Canyon State Academy [CSA], an all-encompassing group home and care facility located in Arizona. CSA staff facilitated MarcAnthony's education, therapy, activities, and contact with the outside world. After spending just over 3 months at CSA, MarcAnthony was unsuccessfully discharged from the program for being physically aggressive, failing to follow the rules, and failing to attend educational programming. In connection with the discharge order, probation officer Kassandra Fourney noted the following:

> Erin Abel, [Licensed Associate Counselor] [CSA] Therapeutic Manager, reported that MarcAnthony has struggled to adjust and engage in the program since his placement began. Ms. Abel reported that MarcAnthony has been involved in numerous incidents and de-escalation calls including seven attempted assaults or fights where . . . Safe Physical Management was required to safely secure MarcAnthony. Ms. Abel reported that MarcAnthony has been placed in [CSA]'s refocus program several times for behaviors or non-compliance and/or verbal and physical aggression. Ms. Abel reported that MarcAnthony refused to go to class despite several interventions to accommodate and compromise with MarcAnthony's requests and needs. Ms. Abel reported that MarcAnthony refused, on multiple occasions, to comply with [CSA] rules, expectations, and staff directives. Ms. Abel reported that MarcAnthony has expressed that he has no intention of completing the [CSA] program successfully and had threatened to continue fighting and/or running if his probation is revoked.

Ms. Abel reported that MarcAnthony has refused [CSA]'s therapeutic services at various points. Ms. Abel reported that MarcAnthony refused to attend and/or cooperate in Substance Abuse Treatment Group. Ms. Abel reported that MarcAnthony had minimal participation in individual therapy due to[] refusing therapy sessions during his scheduled time and being out of the area for non-compliance.

Following the discharge, the State moved again to revoke MarcAnthony's probation alleging that MarcAnthony failed to abide by the rules of placement, failed to attend educational programming, engaged in physical aggression, and failed to comply with a valid court order by losing his court-ordered placement. The probation revocation hearing was held in October 2017. At this hearing, the State provided Fourney's extensive memorandum documenting the "circumstances requiring court action" which was received into evidence as exhibit 7. In this memorandum, Fourney included reports she received from CSA and an intake screening risk assessment form which she authored recommending detention.

During the hearing, Fourney was cross-examined by MarcAnthony's counsel. She admitted that after MarcAnthony was unsuccessfully discharged from CSA, he made the following claims of abuse: First, he claimed that he was made to box another youth in a bathroom where there were no cameras; second, he claimed he had to box a staff member, who beat him up; and third, he claimed he was horse-playing with one of the staff who placed him in a chokehold and would not release him and, when MarcAnthony resisted, he was body-slammed to the ground and dragged across some carpet. Fourney stated that she observed marks on MarcAnthony's forehead that he claimed were from being dragged across the carpet. Fourney reported the incident to her supervisor and Arizona Child Protective Services, but had not received an update on the status of any investigation. MarcAnthony's counsel argued that it would have been difficult for MarcAnthony to communicate these incidents to Fourney sooner because CSA staff was present for all telephone calls.

Following the hearing, the juvenile court revoked MarcAnthony's probation and the State then moved to have him committed to YRTC. That motion was continued because the probation office had recently applied to a few group homes on MarcAnthony's behalf. The record does not reflect the result of those applications. At the continuation hearing on November 27, 2017, the State offered another memorandum prepared by Fourney which was received as exhibit 10. In that memorandum, Fourney summarized the multiple services and placement attempts that were provided to MarcAnthony and his family and the outcome of each attempt. The document summarized the numerous attempts by the Office of Probation to rehabilitate MarcAnthony and documented MarcAnthony's inability or unwillingness to complete those services. Fourney ultimately concluded:

> Despite multiple interventions, MarcAnthony continues to . . . engage in physical and verbal aggression, not comply with rules and expectations in placement, violate Court orders, not comply with the rules and expectations outlined in his probation contract, and not engage or participate in therapeutic treatment services. Because of these factors, MarcAnthony poses a safety risk to himself and others. Probation has exhausted efforts to effectively assist MarcAnthony in addressing behavioral and safety concerns.

I, Specialized Probation Officer, Kassandra Fourney, respectfully recommend that MarcAnthony [] be committed to the Youth Rehabilitation and Treatment Center (YRTC) in Kearney, Nebraska.

Following that hearing, the court adopted Fourney's recommendation and committed MarcAnthony to YRTC.

## ASSIGNMENTS OF ERROR

First, MarcAnthony claims that the juvenile court erred in revoking his probation because the mitigating circumstance of his abuse at CSA was not properly considered. Second, MarcAnthony claims that, even considering his probation revocation, he should not have been committed to YRTC because not all options for community care and levels of probation were considered and there was not an urgent and immediate necessity for the protection of MarcAnthony, others, or others' property.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Alan L.*, 294 Neb. 261, 882 N.W.2d 682 (2016).

## ANALYSIS

### PROBATION REVOCATION

In analyzing the standards for juvenile probation revocation and commitment, the Nebraska Supreme Court recently outlined the statutory disposition options for juveniles, like MarcAnthony, who have been adjudicated under Neb. Rev. Stat. § 43-247(1), (2), or (4). See *In re Interest of Alan L., supra*. The court explained that § 43-286, amended in 2013 and 2014, governs probation revocation and commitment procedures.

> The procedures for changing an existing disposition are now codified at § 43-286(5). Section 43-286(5)(b) governs the procedure for revoking a juvenile's probation or court supervision and changing the disposition. Section 43-286(5)(a) allows a court to enter a new disposition when there are new allegations that "the juvenile is again a juvenile described in" § 43-247(1), (2), (3)(b), or (4). Complying with the procedures under § 43-286(5) is important because in a new adjudication proceeding or a revocation proceeding, the juvenile is entitled to procedural protections, including the right to confront and cross-examine adverse witnesses.
>
> . . . [U]nder § 43-286(1), the State can file a motion to commit a juvenile to [the Office of Juvenile Services] for placement at a YRTC at only three points in a delinquency proceeding: (1) before a court enters an original disposition, (2) before a court enters a new disposition following a new adjudication, or (3) before a court enters a new disposition following a motion to revoke probation or supervision.

*In re Interest of Alan L.*, 294 Neb. at 273-74, 882 N.W.2d at 691. Here, following MarcAnthony's discharge from CSA, the State filed a motion to revoke probation and a motion for commitment to YRTC. As stated, that required application of both sections Neb. Rev. Stat. § 43-286(1) and (5)(b) (Supp. 2017).

Before addressing the court-ordered commitment to YRTC, MarcAnthony first argues that the juvenile court erred in revoking his probation. That part of the statutory procedure is governed by § 43-285(5)(b) which required the State to file a motion to revoke setting forth specific factual allegations governing the alleged violation, required the juvenile court to hold a hearing to determine the validity of the allegations, and following the hearing, the statute provides:

> If the juvenile is found by the court to have violated the terms of his or her probation or supervision or an order of the court, the court may modify the terms and conditions of the probation, supervision, or other court order, extend the period of probation, supervision, or other court order, or enter any order of disposition that could have been made at the time the original order was entered[.]

§ 43-286(5)(b)(v).

Here, the State specifically pled that MarcAnthony failed to abide by the rules of placement, failed to attend educational programming, engaged in physical aggression, and failed to comply with his court-ordered placement at CSA.

Following the statutory hearing, the juvenile court stated in its order that, having reviewed exhibits 6 and 7, Fourney's testimony, and having taken judicial notice of all previous findings and orders, it found "the allegations in the Motion to Revoke Probation are true and the minor child herein is in violation of the Probation Order and probation shall be and is revoked." On the record, the court stated:

> So first of all, the question is, "What is the evidence before the Court today?" And I want to be clear there's no evidence before the Court the child was actually abused at [CSA]. I've heard the allegations through counsel and through Exhibit 6, which is more of a general overview of similar group homes in that same system, but an allegation from a minor child that he's been abused by staff does not necessarily equate to either not being given a chance at group home or equate to that he was necessarily abused. Obviously, I hope that the allegations he made are not true because I don't wish that on any minor child in any placement, wherever it may be.

> But what I have here is a report, Exhibit 7, that talks about a pattern of behavior on behalf of the minor child of arguing with staff, as well as other kids, causing problems, not going to school, not following the rules, and that they continue to try to restructure his placement there in order to keep him from being removed, although he was ultimately removed -- well, the notice was given prior to these incidents that he alleges occurred.

> So I do not equate -- even if I assume his allegations are true, that he's made, I do not equate that with meaning he violated probation. I do find the allegations in the motion to revoke true by clear and convincing evidence as to A, B, C, and D, based on the testimony, as well as Exhibit 7. I do find the child within the meaning of [§] 43-247, Subdivision 1. Probation is hereby revoked.

MarcAnthony assigns that, in making this finding, the court failed to give effect to mitigating circumstances that suggest that the violation did not warrant revocation of probation. In furtherance of that position, MarcAnthony cites to *In re Interest of Markice M.*, 275 Neb. 908, 750 N.W.2d 345 (2008). In *In re Interest of Markice M.*, the court reversed a juvenile court's order which changed the terms of the juvenile's probation from in-home placement to group home placement. But the basis of that reversal had nothing to do with mitigating factors which factually justified a reversal. Instead, the case was reversed because the State failed to file a motion to revoke and comport with the statutory procedures for revocation before the court entered the order. Here, the State did file its motion and complied with the procedural requirements of § 43-286(5) in pursuing this revocation, and the court found that revocation was warranted following a full evidentiary hearing on the record. Specifically, MarcAnthony claims the court did not properly account for his allegation that he was mistreated by staff at CSA and that mistreatment led to his discharge. But as the court noted, there was no evidence in the record supporting that this mistreatment occurred and the documented reasons for MarcAnthony's discharge from CSA were the same as those MarcAnthony experienced in connection with his other discharges. That is, the record is replete with numerous incidences of MarcAnthony's persistent, disruptive, and physically and verbally aggressive behavior; his documented refusal to participate in services; and his many threats directed at numerous person that have been assigned to, and have attempted to, help him.

Pursuant to our de novo review of the record, we hold that there is clear and convincing evidence that MarcAnthony was discharged from CSA due to his unwillingness to participate in the program, that the action is in violation of a court order, and that there were sufficient grounds under § 43-286(5)(b) to revoke his probation.

### COMMITMENT TO YRTC

As we stated before, the State simultaneously pursued, with its motion to revoke probation, a motion to have MarcAnthony committed to YRTC in Kearney, Nebraska. In *In re Interest of Alan L.*, 294 Neb. 261, 882 N.W.2d 682 (2016), the Nebraska Supreme Court outlined the standards by which a court can change a disposition from probation to commitment. In addition to noting that the State must separately comply with the conditions of § 43-286(5), as was done here, it must also comply with the conditions of § 43-286(1). Section 43-286(1)(b)(ii) provides, in pertinent part to this appeal:

> This subdivision applies to all juveniles committed to the Office of Juvenile Services for placement at a youth rehabilitation and treatment center on or after July 1, 2013.
>
> When it is alleged that the juvenile has exhausted all levels of probation supervision and options for community-based services and section 43-251.01 has been satisfied, a motion for commitment to a youth rehabilitation and treatment center may be filed and proceedings held as follows:
>
> (A) The motion shall set forth specific factual allegations that support the motion and a copy of such motion shall be served on all persons required to be served by sections 43-262 to 43-267; and

(B) The juvenile shall be entitled to a hearing before the court to determine the validity of the allegations. At such hearing the burden is upon the state by a preponderance of the evidence to show that:

(I) All levels of probation supervision have been exhausted;

(II) All options for community-based services have been exhausted; and

(III) Placement at a youth rehabilitation and treatment center is a matter of immediate and urgent necessity for the protection of the juvenile or the person or property of another or if it appears that such juvenile is likely to flee the jurisdiction of the court.

In reviewing that statute, the Nebraska Supreme Court summarized:

We have previously considered the 2013 amendment of § 43-286, which required a court to find the three statutory conditions existed before committing a juvenile to OJS for placement at a YRTC. In *In re Interest of Nedhal A.*, [289 Neb. 711, 856 N.W.2d 565 (2014),] we explained that by imposing these conditions, the Legislature intended to make a juvenile's placement at a YRTC the placement of last resort. We held that before a juvenile court can order this placement, the "Office of Probation Administration must review and consider thoroughly what would be a reliable alternative to commitment at YRTC." [*Id.* at 716, 856 N.W.2d at 569.] It must also provide a report to the court that supports one of the following conclusions: (1) there are "untried conditions of probation or community-based services [that] have a reasonable possibility for success" or (2) "all levels of probation and options for community-based services have been studied thoroughly and . . . none are feasible." [*Id.*] And the "review should consider the success or failure of prior supervisory conditions, even if the conditions were imposed by some other agency responsible for the child's care, such as [the Department of Health and Human Services]." [*Id.*] For example, the office could consider a juvenile's previous supervision under an adjudication in a neglect and dependency case. [See *id.*] In considering whether the State has shown that a juvenile should be placed at a YRTC, we specifically declined to require a juvenile court to repeat measures that were previously ineffective or unsuccessful.

*In re Interest of Alan L.*, 294 Neb. at 271-72, 882 N.W.2d at 690.

MarcAnthony's specific assignment of error is that the State failed to prove, by a preponderance of the evidence, that all levels of probation supervision and community-based services had been exhausted and that his placement at a youth-based rehabilitation and treatment center was a matter of immediate and urgent necessity for the protection of MarcAnthony or the person or property of another or that it appeared likely MarcAnthony was likely to flee the jurisdiction of the court. In support thereof, MarcAnthony contends that there was no evidence, aside from the conclusory opinion of Fourney, that a commitment was warranted. Specifically, MarcAnthony noted that his problems stemmed mainly from substance abuse, and that the Office of Probation had failed to attempt to enroll him in residential substance abuse treatment notwithstanding the fact that residential treatment was outlined as an alternative in the original disposition order. Additionally, MarcAnthony argues that Fourney failed to note in her report that

all levels of probation and options for community-based services had been thoroughly considered or explain why other possibilities, such as residential substance abuse treatment were not feasible.

Contrary to MarcAnthony's argument, the reports offered by Fourney painted a clear picture of numerous services and placements provided and arranged by the office of probation for MarcAnthony. These services, included, but were not limited to, inpatient treatment, outpatient treatment, group home placement, crisis stabilizations, and shelter care placement which all resulted in unsuccessful discharge due to MarcAnthony's actions and refusal to participate. These reports documented numerous physical and verbal altercations instigated by MarcAnthony; defiance of rules, scheduling, and staff directives; and statements by MarcAnthony expressing his intentions of noncompliance or threats of continued violence or flight. As aptly noted by the juvenile court, the reports describe a "pattern of behavior" which is inconsistent with obtaining success with levels of probation supervision or community-based services. Based upon the reports and testimony of Fourney and the numerous attempts at rehabilitative services and placements which resulted in discharge, we believe the record supports, by a preponderance of the evidence, that the Office of Probation had exhausted all levels of probation supervision and community-based services, meaning, in this case, MarcAnthony's behavior would suggest that future efforts would result in a similar outcome. Referring to its previous decision in *In re Interest of Nedhal A.*, 289 Neb. 711, 856 N.W.2d 565 (2014), the Supreme Court noted in *In re Interest of Alan L.*, 294 Neb. 261, 272, 882 N.W.2d 682, 690 (2016): "In considering whether the State has shown that a juvenile should be placed at a YRTC, we specifically declined to require a juvenile court to repeat measures that were previously ineffective or unsuccessful." In *In re Interest of Nedhal A.*, the court stated: "We decline to impose an interpretation of § 43-286 that would require repetition of ineffective measures or require the Office of Juvenile Services to provide services that have already been proved to be unsuccessful. The Legislature did not intend such a result." 289 Neb. at 716, 856 N.W.2d at 569.

MarcAnthony separately argues that the third element necessary to support commitment is not present here. That is, the State's burden to prove "[p]lacement at a youth rehabilitation and treatment center is a matter of immediate and urgent necessity for the protection of the juvenile or the person or property of another or if it appears that such juvenile is likely to flee the jurisdiction of the court." § 43-286(1)(b)(ii)(B)(III). Again, MarcAnthony argues the record does not support such a finding.

Contrary to his argument, Fourney's reports are replete with references to MarcAnthony's current violent reactions toward others when he is requested to participate in programs or services which he does not approve, and Fourney's report captures MarcAnthony's threat to flee if his probation was revoked. This evidence is consistent with a finding that MarcAnthony is, and remains, a threat to others, is likely to flee the jurisdiction of the court, and that his placement at a youth rehabilitation and treatment center is a matter of immediate and urgent necessity.

## CONCLUSION

In sum, we affirm the juvenile court's order revoking MarcAnthony's probation and committing him to YRTC.

AFFIRMED.