IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF TATE W.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF TATE W., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

TATE W., APPELLANT.

Filed July 30, 2024.    Nos. A-23-876 through A-23-878.

Appeals from the County Court for Madison County: MICHAEL L. LONG, Judge. Affirmed.

Matthew H. Soltys, Deputy Madison County Public Defender, for appellant.

Nathan T. Eckstrom, Deputy Madison County Attorney, for appellee.

PIRTLE, Chief Judge, and RIEDMANN and BISHOP, Judges.

BISHOP, Judge.

## INTRODUCTION

In three separate cases, Tate W. appeals from the order of the county court for Madison County, sitting as a juvenile court, committing her to the Youth Rehabilitation and Treatment Center (YRTC). The appeals have been consolidated for review and disposition. We affirm.

## BACKGROUND

Tate, born in October 2008, was 13 years old when a juvenile petition was filed in 2022, and was 14 years old when two more were filed the following year. She was a couple weeks shy of turning 15 when the juvenile court entered its order committing her to the YRTC.

- 1 -

On July 6, 2022, the State filed a petition in the county court for Madison County, sitting as a juvenile court, alleging that Tate was a juvenile within the meaning of Neb. Rev. Stat. § 43-247(1) and (3)(b) (Reissue 2016) because Tate was an "Uncontrollable Juvenile" (count I), and committed "Theft by Unlawful Taking or Disposition," $500 or less, a Class II misdemeanor (count II).

In an amended petition filed on August 15, 2022, the State alleged that Tate was a juvenile within the meaning of § 43-247(1); § 43-247(3)(b) was not alleged. The State dismissed count I (uncontrollable juvenile), but maintained count II (theft), and added an allegation of disturbing the peace, a Class III misdemeanor (count III).

Following a hearing on October 17, 2022, at which the juvenile court stated it was a "disposition hearing . . . after an adjudication," the court ordered that, for counts II and III, Tate was to be placed on supervised probation for 6 months, with certain terms and conditions. Tate was also ordered to pay $60 in restitution. The terms and conditions of Tate's probation included, among other things, that the juvenile shall:

1. Not violate any ordinances, state or federal law including traffic violations. Any arrest or citation must be reported to the probation office by the next working day.

2. Report as directed by the probation officer and answer any questions and permit the officer to visit at all reasonable times and places.

. . . .

6. (A) The juvenile shall attend school and obey all school rules. The juvenile shall not be expelled, suspended, absent without a valid excuse, tardy or placed in detention. The juvenile shall pass all classes. The juvenile shall hand in all homework on time.

(B) The juvenile shall not use or possess alcohol, any controlled substance without a prescription or any tobacco product.

(C) The juvenile shall submit to a test of his/her blood, breath or urine by the probation officer or any law enforcement officer.

. . . .

The State subsequently filed several alleged probation violations by Tate, as will be set forth later in this opinion.

On April 6, 2023, the State filed a petition in the county court for Stanton County, sitting as a juvenile court, alleging that Tate was a juvenile within the meaning of § 43-247(1) because between March 18 and 19 Tate committed "Criminal Mischief" causing a pecuniary loss of $500 dollars or more but less than $1,500, a Class II misdemeanor. Following a hearing on July 11, Tate was adjudicated under § 43-247(1) after she admitted to the allegation in the petition. The case was then transferred to the county court for Madison County, where it was filed as case No. JV 23-91.

On May 18, 2023, the State filed a petition in the county court for Madison County, sitting as a juvenile court, alleging that Tate was a juvenile within the meaning of § 43-247(1) because on March 19 Tate committed "Theft by Unlawful Taking or Disposition," $500 or less, a Class II misdemeanor (count I), and provided "False Information," a class I misdemeanor (count II); and on May 10, Tate was in "Possession of Marijuana Weighing Less than One Ounce/Possession of Synthetic Marijuana," an infraction (count III). In an amended petition filed on June 10, the State additionally alleged that on May 30 Tate committed "Theft by Unlawful Taking or Disposition," $500 or less, a Class II misdemeanor (count IV).

ALLEGED PROBATION VIOLATIONS AND MOTION TO REVOKE

As stated previously, the State filed several alleged probation violations by Tate in case No. A-23-876/JV 22-85.

On March 30, 2023, the State filed an "Alleged Probation Violation," because Tate was cited by Norfolk Police on March 19 for "Theft by Unlawful Taking-Movable Property, Curfew For Minors, False Reporting-Police Officer, Unauthorized Entry into Motor Vehicle"; cited by the Stanton County Sheriff's Office on March 21 for "Criminal Mischief $501-1,499"; and possessed a nicotine vape and tested positive for nicotine on March 24.

On April 10, 2023, the State filed an "Alleged Probation Violation," because Tate received detention and numerous days of in-school and out-of-school suspension from March 15 through April 12 for talking back to teachers, not following directions, having her phone on, being disruptive and disrespectful, calling the school secretary a name using rude and inappropriate language; she had been absent 88 class periods from January 5 until March 4; and she tested positive for THC nine times from January 9 through April 7, and tested positive for nicotine twice.

On April 19, 2023, the State filed a motion to revoke Tate's probation alleging the same violations of probation that were set forth previously. At a hearing on May 18, Tate entered a denial of the allegations in the motion to revoke probation.

On May 16, 2023, the State filed a "Second Amended Alleged Probation Violation," alleging that Tate received 19 days of out-of-school suspension on April 26 "as a result of her ongoing disruptive behaviors, using profanity towards teachers, being defiant towards teachers, and distracting other students"; she attended "The Centrum" from April 27 until May 11, but was asked not to return after she was observed to possess a vape that contained THC and a vape that contained nicotine, and she exhibited defiant behavior towards staff, did not follow the dress code, and was distracting to the other students; she was cited for possession of marijuana, 1 oz or less, first offense; she had positive chemical test results for THC (four times) and/or nicotine (one time), as well as her failure to show for chemical testing on four occasions.

On June 5, 2023, the State filed a "Third Amended Alleged Probation Violation," alleging that Tate was cited on May 30 for "Theft-Unlawful Taking $0-500" for taking money from a staff member's purse while "attending the summer session Day Reporting at COR Therapeutic Services"; and she denied knowing where the money was while being questioned by a probation officer.

PLEA AGREEMENT, DISPOSITION, AND DETENTION

At a hearing on July 12, 2023, for case No. A-23-876/JV 22-85 and case No. A-23-877/JV 23-59, the juvenile court was informed that a plea agreement had been reached wherein Tate would "admit to the revocation of probation" in case No. A-23-876/JV 22-85. As to case No. A-23-877/JV 23-59, she would admit to counts I (theft by unlawful taking), II (false information), and IV (theft by unlawful taking), but count III (possession of marijuana, less than 1 ounce) would be set for trial. Tate then withdrew her previous denial to the Motion to Revoke Probation and was adjudicated under § 43-247(1) based on her admissions as described above. Tate was released to her father, with all probation orders still in place, and no additional conditions of release. Journal entries and orders memorializing the same were entered that same day. Subsequently, on July 17, Tate withdrew her denial and entered an admission to count III in case No. A-23-877/JV 23-59 and was adjudicated under § 43-247(1).

At a hearing on July 17, 2023, the juvenile court granted the State's oral motion to continue the disposition hearing for all three docketed cases. Tate was released on the conditions of her probation. At the hearing, Cynthia Tauber, Tate's probation officer, testified that Tate had been wearing a GPS ankle monitor since the end of March but had not been staying within her designated boundaries and had not been keeping her monitor charged; Tauber and Tate's father suspected that Tate had been sneaking out of the home. After hearing Tauber's testimony, the court specified some additional conditions of release, including that Tate was placed on house arrest with a GPS monitor (to remain charged at all times) and her whereabouts were limited to probation meetings, employment, therapy, school, or in the immediate company of her father. The court stated that if Tate violated the conditions of her house arrest or if she possessed illegal controlled substances, tested positive for such, or failed to provide a sample for testing, then she "must be detained until further order of the Court." Probation was ordered to seek an appropriate out-of-home placement.

Subsequently, on July 18, 2023, the State filed a "Motion for Detention Hearing" alleging that Tate was detained on July 17 pursuant to an alleged violation of an order for conditional release. At a hearing on July 18, probation officer Tauber testified that on the evening of July 17, she went to Tate's house to place Tate's ankle monitor, search Tate's room, and conduct a "UA." When asked why she decided to do a UA the evening of July 17, Tauber responded that prior to the court hearing that day, Tate asked if she could do a UA because she was certain that she was going to test negative. However, Tate's UA was "positive for THC and ETG, which is alcohol"; Tate's previous test on July 14 "was negative for all substances." Because of the positive test and the juvenile court's order from July 17, Tauber detained Tate. At the request of Tate's counsel, Tate was allowed to take another drug test during a court recess; it was positive for THC.

When the hearing resumed after the recess, the juvenile court said it was reviewing Tauber's supervision report for October 17, 2022, to July 7, 2023; the report was not offered or received into evidence at this hearing. The court noted some things from the report to "make a little bit of a record." According to the court, Tate had "a couple of thefts," one from an incident while at "day reporting" and one from a coworker (Tate denied stealing from the coworker even though it was on video); Tate missed 18 drug tests and had 20 positive tests; and Tate's father reported she was drinking in her room and sneaking out of the house at night.

- 4 -

The juvenile court ordered Tate to be detained. In its journal entry and order entered on July 18, 2023, the court found that detention was necessary "because the physical safety of persons in the community would be seriously threatened" or "to secure the presence of the juvenile at the next hearing, as evidenced by a demonstrable record of willful failure to appear at the scheduled court hearing within the last twelve months." Tate was committed for detention to Northeast Nebraska Juvenile Services.

On August 1, 2023, the State filed an "Alleged Probation Violation" in case Nos. A-23-876/JV 22-85 and A-23-877/JV 23-59, because Tate had been cited by the Norfolk Police Department on June 29 for "Uncontrollable Juvenile" after her father reported that she was throwing knives at the walls in the home because he would not allow her to have access to the internet.

PLACEMENT AT UTA HALEE ACADEMY

Also on August 1, 2023, Tate filed an "Objection to Change of Placement" in all three docketed cases objecting to the Department of Probation's recommendation for placement at the Uta Halee Academy, alleging that such placement was not in her best interest.

At a hearing on August 3, 2023, the State informed the juvenile court that Tate had been "accepted to the Uta Halee group home program" and "Uta Halee would have been able to take her this morning had she not objected, but the court had not ordered that she be placed there yet" and "[s]he did object." "At this point [Uta Halee] can take her on Tuesday if the court orders placement," and the State was asking for placement.

Probation officer Tauber testified that Tate had lived with her father until she was detained. Tauber confirmed that: Tate's father is elderly and has physical limitations that make it difficult for him to get around and keep up with Tate; Tate has had issues following the rules and has a history of getting physical with her family; it has been difficult for Tate's father to successfully enforce rules and hold Tate accountable at home; and Tauber had tried different services in the home with Tate and worked with Tate and her father to address Tate's substance use and other behaviors, but that had not been successful. Tauber tried to talk to Tate on "several occasions," about changing her behaviors and obeying rules, but Tate "usually tells me to shut up or to leave, or are we done." Probation tried using the multisystemic therapy program with this family, where a therapist spends several hours a week in the home working with the child and the parent. However, Tate was "[n]ot always" cooperative and would not follow the therapist's recommendations; Tauber said that Tate was "very, very rude" to the therapist and "at least once a week" Tauber had to tell Tate to be nice to the therapist and stop talking back. Tauber replied affirmatively when asked if multisystemic therapy was the most intense level of in-home service.

According to Tauber, Tate had a psychological evaluation in July 2023, and it recommended out-of-home placement. The psychological evaluation, which was received into evidence, states:

> I recommend Tate receive a psychiatric evaluation to be considered for treatment of depression. With this exception Tate reports and demonstrates lack of interest in therapeutic services or support and does not show desire or plans for change. Given her functioning over the past year, including during probation, Tate is not likely to demonstrate improvements in her functioning in an outpatient setting. Risk for continued delinquent

and substance abuse behaviors is high. Tate's current presentation also suggests low prognosis for change within a therapeutic residential treatment program such that her presence would more likely than not be a hinderance to the treatment of others. Therefore, other arrangements for placement should be considered.

Tauber testified that she looked for an out-of-home placement for Tate as previously ordered by the juvenile court, and said Tate was accepted to Uta Halee, a group home residential "academy for girls" that "is designed to fulfill their school [sic], work on behaviors." When asked if Tate had been accepted for any other type of out-of-home placement, the probation officer said, "No, she has not." Probation recommended placement at Uta Halee.

Tate testified that she was concerned that the Uta Halee program would not "fit what I need" because "I need . . . a program just for me, just to help me," more one-on-one individualized attention. Tate wanted a foster home placement where she would be the only child in the home. When asked why she thought she would do better in a home with no other children as opposed to the program at Uta Halee, Tate responded, "Because . . . programs with other kids is probably, like, . . . they're going to be going between kids and kids," "[a]nd I think I just need someone to work with me alone for my help." However, Tauber testified that she applied with foster home agencies for Tate, but that Tate had not been accepted to any at this time. Although "[t]here are times" that probation arranges for a specialized foster home for certain youth with high needs (a shared living provider), that has not been done in this case because "we aren't allowed to . . . put youth in there for their first time placement"; Tate would not meet the criteria for a shared living provider at this time.

In an order entered on August 3, 2023, the juvenile court overruled Tate's objection to placement and ordered probation to place her at Uta Halee as soon as a bed was available. Tate was to remain in detention until securely transported to Uta Halee and she was ordered to participate in and successfully complete the Uta Halee program. If Tate were to leave the program without permission or was unsuccessfully discharged from the program, "the juvenile must be detained until further order of the Court."

On August 9, 2023, the State filed a "Motion for Arrest Warrant" for Tate in case No. A-23-876/JV 22-85. In an attached affidavit, the State alleged that Tate had been transported to Uta Halee Academy in Omaha, Nebraska, on August 8, but she absconded from the academy on August 9. The juvenile court issued an arrest warrant for Tate on August 10. Tate was arrested that same day and placed in custody at the Northeast Juvenile Detention Center.

On August 18, 2023, the State filed an "Amended Alleged Probation Violation" in all three docketed cases because Tate was unsuccessfully discharged from Uta Halee Academy on August 9. The State alleged that Tate absconded from Uta Halee Academy and "was gone for several hours before being returned to the campus by law enforcement" and staff indicated she "was making threatening statements toward staff when she returned to the campus."

COMMITMENT TO YRTC

On October 12, 2023, the State filed a "Motion for Commitment to YRTC" in all three docketed cases. The State alleged that services for this juvenile have included but are not limited to drug testing, searches, GPS monitoring, day reporting, one-on-one and family team meetings, a

psychological evaluation, and "Multi-Systemic Therapy, which is the highest level of in-home service available to juvenile probationers." The State further alleged that: (1) all levels of probation supervision had been exhausted; (2) all options for community-based services had been exhausted; (3) placement at a YRTC is a matter of immediate and urgent necessity for the protection of the juvenile or the person or property of another or it appears that the juvenile is likely to flee the jurisdiction of the court; (4) the juvenile has reached the age of 14 years; and (5) maintaining the juvenile in the home presents a significant risk of harm to the juvenile or community as required by Neb. Rev. Stat. § 43-251.01 (Cum. Supp. 2022).

A disposition hearing was held on October 16, 2023. Tate's July 2023 psychological evaluation and the probation supervision report from October 17, 2022, to July 7, 2023, were among the exhibits received into evidence.

Tauber testified that she is a specialized probation officer, and that Tate was classified as a "high-risk juvenile." Tate was placed on probation in October 2022, and she continued to live with her father. Multisystemic therapy was put in the home from January to June 2023, when Tate was unsuccessfully discharged by the therapist. According to Tauber, in multisystemic therapy,

> the therapist who is assigned would work with the youth to set up goals, discuss what the barriers are to reach the goals so that they can be in the community in a safe manner. They're not hurting themselves. They're not hurting others.
>
> The working [sic] with the parents so that they're learning parenting skills, how to parent the youth when -- if there is a discipline, it's appropriate discipline, setting up consequences, setting up, you know, incentives or positive role modeling, various things, whatever the family is struggling with.

Tauber stated that Tate did not involve herself in a lot of the sessions, would make inappropriate comments to the therapist, and did not like the fact that therapy supported her father implementing rules. Tauber replied affirmatively when asked whether multisystemic therapy was the most intensive and comprehensive program that probation has for youth who are still living at home in the community.

Tate was detained in July 2023. The psychological evaluation recommended that Tate be placed outside the home because outpatient services were not successful. Tate was subsequently placed at Uta Halee in August; that was the only group home that accepted her.

Tauber testified that Uta Halee, "is a good program," where Tate could go to school and "[i]t helps with her treatment" and "[s]he can learn some coping skills to assist her with staying clean and sober." However, Tate "ran [away] the day she was placed there." Tate was found and was temporarily placed back at Uta Halee; she made verbal threats to staff, so she was placed in shelter care there, and had constant supervision. Tate was then transported back to Madison County and placed in detention, where she remained.

Tauber stated that "Probation is recommending that [Tate] be placed at the [YRTC]."

Tauber was asked what programs probation would be able to put in place for Tate if she was, hypothetically, placed back at home. Tauber replied, "Tate has recently expressed that she would like to participate in individual therapy, so that is something that we can line up"; GPS monitoring; and "[w]e can try for in-home services[,] however, I don't know if multisystemic therapy would accept Tate because of the behaviors that she had and with this last term of it."

- 7 -

However, none of those services worked last time Tate was at home. When Tate was at home she had GPS monitoring, was subjected to drug testing, and had her room and electronic devices searched by probation. Tate was also in "day reporting" for a while, which is "where youth go if they need to get caught up on homework" or have "out-of-school suspension." Tauber knew of two day-reporting facilities in Norfolk, Nebraska; Tate was not allowed to return to one after she was found in possession of a THC vape, and she was not allowed to return to the other after she stole money from the supervisor.

On cross-examination, Tauber stated that Tate had not previously wanted to participate in therapy, despite being asked several times. Tauber had not looked into any alternative placements since Tate was discharged from Uta Halee; Tate had previously been denied from all other group homes and all available foster care agencies, and the probation officer did not reach out to those places again. When asked if she had ever had youth kicked out of a placement and then found another alternative out-of-home placement for them, Tauber replied, "Not in a group home or foster home facility, no."

Tate's attorney argued that Tate had shown a renewed desire to attend individualized therapy and had shown "some signs of self-reflection and growth through her time at the juvenile detention center," as evidenced by exhibits showing that she achieved honors status in the behavioral program, and the receipt of certificates of completion for certain academic courses. Counsel asked the juvenile court to order probation to seek appropriate out-of-home placement outside of YRTC.

The juvenile court entered an order on October 16, 2023, granting the State's motion for commitment to YRTC. The court found:

> Commitment to HHS/OFC of Juvenile Srvcs/YRTC Kearney or Geneva or Hastings is necessary for the protection of the health and welfare of the child and society. The Court finds that all levels of probation supervision and options for community based services have been exhausted, no other community based resources have a reasonable possibility of success, and placement of the juvenile is a matter of immediate and urgent necessity for the protection of the juvenile, or the person or property of another, or it appears that such juvenile is likely to flee the jurisdiction of the court.

> The juvenile will cooperate with placement and programming through Nebraska Department of Health and Human Services at the Youth Rehabilitation and Treatment center until discharge. A reentry hearing shall be held, before the court, 30 days prior to discharge to include consideration of the juvenile's individualized reentry plan.

> Juvenile is committed under the terms of a separate Intensive Supervision Probation order.

The court placed Tate on intensive supervised probation for a period of 4 years, 15 days, subject to various terms and conditions.

Tate appeals.

## ASSIGNMENT OF ERROR

Tate assigns that the juvenile court erred by committing her to the YRTC because the State failed to meet its burden to show that all levels of probation supervision and community-based resources had been exhausted.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Elijahking F.*, 313 Neb. 60, 982 N.W.2d 516 (2022).

## ANALYSIS

Neb. Rev. Stat. § 43-286 (Supp. 2023) states in relevant part:

(1) When any juvenile is adjudicated to be a juvenile described in subdivision (1), (2), or (4) of section 43-247:

. . . .

(b) When it is alleged that the juvenile has exhausted all levels of probation supervision and options for community-based services and section 43-251.01 [restrictions on placements and commitments] has been satisfied, a motion for commitment to a youth rehabilitation and treatment center may be filed and proceedings held as follows:

. . . .

(iii) The juvenile shall be entitled to a hearing before the court to determine the validity of the allegations. At such hearing the burden is upon the state by a preponderance of the evidence to show that:

(A) All levels of probation supervision have been exhausted;

(B) All options for community-based services have been exhausted; and

(C) Placement at a youth rehabilitation and treatment center is a matter of immediate and urgent necessity for the protection of the juvenile or the person or property of another or if it appears that such juvenile is likely to flee the jurisdiction of the court;

(c) After the hearing, the court may, as a condition of an order of intensive supervised probation, commit such juvenile to the Office of Juvenile Services for placement at a youth rehabilitation and treatment center operated in compliance with state law.

The Legislature intended the placement of a juvenile at YRTC to be a last resort. *In re Interest of Nedhal A.*, 289 Neb. 711, 856 N.W.2d 565 (2014). Section 43-286 requires that before a juvenile is placed in YRTC, the Office of Probation Administration must review and consider thoroughly what would be a reliable alternative to commitment at YRTC. *Id.* Upon reviewing the juvenile's file and record, the Office of Probation Administration shall provide the court with a report stating whether any such untried conditions of probation or community-based services have a reasonable possibility for success or that all levels of probation and options for community-based services have been studied thoroughly and that none are feasible. *Id.* In considering whether the State has shown that a juvenile should be placed at a youth rehabilitation and treatment center, a juvenile

court is not required to repeat measures that were previously unsuccessful. *In re Interest of Alan L.*, 294 Neb. 261, 882 N.W.2d 682 (2016).

Tate argues that she has "only been adjudicated of misdemeanor offenses – never a felony." Brief for appellant at 13. She acknowledges that she was placed at a group home placement and had "gone 'on run' from this placement." *Id.* But she contends that a "thorough review of all levels of probation supervision and community-based resources was not completed." *Id.* She argues that the "Office of Probation took zero action and made zero effort to locate an appropriate out of home placement or appropriate community-based resources" after her discharge from Uta Halee. *Id.* at 14. Tate claims that at the time of the October 2023 disposition hearing, "it was unknown whether [she] would have been accepted to any alternative placements or less restrictive alternatives to commitment at the YRTC," and "[i]t was unknown whether any community-based resources could have had a reasonable possibility of success." *Id.*

Tate relies on *In re Interest of Nedhal A., supra*, to support reversing the juvenile court's order committing her to the YRTC. She contends that *In re Interest of Nedhal A.* presents a "similar scenario," and the Nebraska Supreme Court reversed a placement at YRTC in that case. Brief for appellant at 13. Notably, in *In re Interest of Nedhal A.*, the juvenile's criminal mischief and disturbing the peace offenses were her first adjudicated law violations, she had no prior involvement with the Office of Probation Administration, and although the juvenile had run away from a prior group home, a different group home had offered to accept her. Tate contends that probation took "zero action and made zero effort" to locate other appropriate out-of-home placement after she was discharged from Uta Halee. Brief for appellant at 14. However, the Supreme Court has said that a juvenile court is not required to repeat measures that were previously unsuccessful. See *In re Interest of Alan L., supra*.

In this case, Tate was adjudicated to be a juvenile described in § 43-247(1) and was subsequently placed on probation in October 2022. Starting in March 2023, several alleged probation violations and two other juvenile dockets were filed against Tate. The 56-page probation supervision report for October 17, 2022, to July 7, 2023, details Tate's numerous violations of probation and the law during that time period. The report states that Tate's "overall Risk Level has increased since her last assessment on January 19, 2023," and she is currently assessed at a "Very High" overall risk level. The State acknowledges that this report "was not in itself the best analysis of exhausted services as required by *Alan L.* and *Nedhal A.*," but that the report, along with an earlier probation report received into evidence, and Tauber's testimony, gave the juvenile court a "clear picture of what services had been tried and the likelihood of success of continued services." Brief for appellee at 10. We agree.

Probation officer Tauber testified that when Tate was placed on probation in October 2022, she was allowed to remain at home with her father. Multisystemic therapy was put in place in the home from January to June 2023, at which time Tate was unsuccessfully discharged; multisystemic therapy is the most intensive and comprehensive program that probation has for youth who are still living at home in the community.

According to Tauber, Tate was put on a GPS ankle monitor in March 2023, but she violated boundary restrictions and would not keep her monitor charged. She was placed on house arrest and GPS monitoring in July but was detained later that same day after a positive drug test. A July psychological report opined that Tate "is not likely to demonstrate improvements in her

functioning in an outpatient setting," and that her "[r]isk for continued delinquent and substance abuse behaviors is high"; her "presentation also suggests low prognosis for change within a therapeutic residential treatment program." The record shows that in August, Tate was placed at the Uta Halee academy but absconded that same day; when she was returned to campus by law enforcement, staff indicated that Tate "was making threatening statements toward staff." She was later arrested and placed in detention, where she remained at the time of the YRTC commitment hearing in October. Tauber testified that there were no other alternative group home or foster placements available to Tate, and all previous services had already failed.

The juvenile court found that based on the evidence, all levels of probation supervision had been exhausted. The court stated that it had been less than 1 year, "but everything has been tried," "[c]ommunity-based services have been exhausted," and "Tate is not cooperative." Based on our de novo review of the records, we agree that all levels of probation supervision and options for community-based services were exhausted. Unfortunately, despite extensive efforts by juvenile probation to assist and rehabilitate Tate both through in-home and out-of-home options, her unwillingness to cooperate at every level leaves only this last resort. Accordingly, we affirm Tate's commitment to the YRTC.

## CONCLUSION

For the reasons stated above, we affirm the juvenile court's October 16, 2023, order committing Tate to the YRTC.

AFFIRMED.