IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. TAMIA R.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TAMIA R., APPELLANT.

Filed January 20, 2026.    No. A-25-408.

Appeal from the County Court for Madison County: MICHAEL L. LONG, Judge. Affirmed.

Matthew H. Soltys, Madison County Deputy Public Defender, for appellant.

Nathan T. Eckstrom, Madison County Attorney, for appellee.

RIEDMANN, Chief Judge, and PIRTLE and FREEMAN, Judges.

PIRTLE, Judge.

INTRODUCTION

Tamia R. appeals from the order of the county court for Madison County, sitting as a juvenile court, committing her to the Youth Rehabilitation and Treatment Center (YRTC). We affirm.

BACKGROUND

On March 31, 2025, a juvenile petition was filed alleging two counts against Tamia, a juvenile as described in Neb. Rev. Stat. § 43-247(2) (Cum. Supp. 2024). The petition alleged that Tamia, a ward of the Omaha Tribe of Nebraska, committed theft by receiving stolen property and willfully or recklessly operated a motor vehicle to avoid arrest.

On March 31, 2025, the juvenile court heard the petition. Tamia admitted to the two charges as a part of an agreement that the State would not bring any additional charges from the event. The State provided a short factual basis for both allegations.

Summarized, the factual basis included that on March 28, 2025, Tamia was found in Norfolk, Nebraska, driving a vehicle that did not belong to her. The vehicle was a 2020 Chrysler Pacific minivan, with an estimated value of over $5,000. Tamia had taken the vehicle without permission from her placement at a shelter in Macy, Nebraska. She drove it to Madison County, Nebraska. She initially went to turn herself in at the police station but left the police station still in possession of the vehicle.

The police attempted to stop the vehicle, but Tamia refused to stop and drove away. The police deployed spike strips, and Tamia drove onto the curb to avoid them. At one point, Tamia drove directly toward a police cruiser. After hitting a second set of spike strips, she continued to drive but eventually stopped and was taken into custody. Tamia was under the age of 18 during these events.

The juvenile court accepted Tamia's admissions, adjudicated her to be a juvenile under § 43-247(2) and ordered probation to perform a predisposition investigation. Immediately after the court's decision, the State filed a motion for the court to order that Tamia be placed at the YRTC pursuant to Neb. Rev. Stat. § 43-286 (Cum. Supp. 2024). The state provided a detention intake, which included a Nebraska Juvenile Justice Intake Summary, which was created by a state probation officer.

On May 19, 2025, there was a disposition hearing on the motion for commitment to the YRTC. The court reviewed the predisposition investigation and considered it in making its decision. The court also heard testimony from Christina Parker, Tamia's tribal case worker. Parker testified that Tamia had been in and out of several placements. She stated that Tamia had been through foster homes, group homes, shelter cares, and after her most recent foster placement, she was at Red Circle Lodge, a therapeutic group home. Parker said that while at Red Circle Lodge, Tamia "blew up out there" and did a lot of damage. Parker testified that after this Tamia was sent to Vive, another adolescent treatment facility, but she also did damage at that facility. Parker stated that after Vive, Tamia went to Mark of Honor in Macy, Nebraska, which is where she was placed at the time the incident with the stolen vehicle occurred.

Parker said that she had not made applications for any other out-of-home placements, as it was hard to get foster homes that are licensed and approved by the tribe, and the last foster home Tamia was placed with no longer fostered. Parker stated that at Tamia's last foster placement, Tamia got in trouble at school for having a THC vape, but charges related to the incident were on hold until she successfully completed treatment at Red Circle Lodge. Parker testified that she tried to locate alternative placements by attempting to contact Tamia's aunt, but her aunt was afraid that Tamia would act out or do "something like this" and get "herself into trouble." However, Parker stated before Tamia returned to any type of foster care, Tamia needed intensive treatment, which is why she was at Red Circle Lodge and Vive.

Parker said that if Tamia was returned to her care and released from detention, that the tribe would not have a placement for her, because at every placement that she went to, she "gets herself into trouble." She stated that the youth shelter would not take Tamia back and that foster care was no longer appropriate for her. Parker testified that the tribe had been trying to get Tamia into the YRTC, because it was the only option left. Parker said that if the juvenile court did not send her to the YRTC, then there was no other place that would take Tamia.

The court found, based on all the evidence, that all levels of probation and supervision and all options for community-based services had been exhausted. The court determined that placement at the YRTC was an immediate and urgent necessity for the protection of Tamia. The court considered that given the seriousness of her law violation that probation supervision and community-based services would not be effective. Tamia subsequently appealed.

## ASSIGNMENT OF ERROR

Tamia assigns that the juvenile court erred in committing her to the YRTC because the State failed to meet its burden to show that all levels of probation supervision and community-based resources had been exhausted.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Nedhal A.*, 289 Neb. 711, 856 N.W.2d 565 (2014).

## ANALYSIS

Tamia asserts the juvenile court erred in committing her to the YRTC because the State failed to meet its burden to show that all levels of probation supervision and community-based resources had been exhausted as set forth in § 43-286. Section 43-286 requires three conditions to be met before a juvenile is committed to the YRTC: (1) all levels of probation supervision be exhausted; (2) all options for community-based services be exhausted; and (3) that the juvenile's placement at a YRTC be a matter of immediate and urgent necessity for the protection of the juvenile. See *In re Interest of Alan L.*, 294 Neb. 261, 882 N.W.2d 682 (2016).

In *In re Interest of Nedhal A., supra*, the Nebraska Supreme Court considered the question of what is required to "exhaust" all levels of probation supervision and options for community-based services in the context of § 43-286. The court found that the Legislature intended the placement of a juvenile at the YRTC to be a "last resort" and concluded that "before a juvenile is placed in YRTC, the Office of Probation Administration must review and consider thoroughly what would be a reliable alternative to commitment at YRTC." *In re Interest of Nedhal A.*, 289 Neb. at 715-16, 856 N.W.2d at 569.

Section 43-286 does not require repetition of ineffective measures or require the Office of Juvenile Services to provide services that have already proven to be unsuccessful. See *In re Interest of Nedhal A., supra*. In fact, the *Nedhal* court clarified that it did not mean to imply that the juvenile court must ensure that "every conceivable probationary condition" be tried and failed before it may place a juvenile at YRTC. *Id.* at 716, 856 N.W.2d at 569.

Rather, the review of the case should consider the successes or failures of prior supervisory conditions, and ineffective measures will not be repeated if they had proven to be unsuccessful. See *In re Interest of Nedhal A., supra*. A court may commit a juvenile to the YRTC even if a juvenile had never been on probation, so long as the record reflects that all levels of probation and options for community-based services had been thoroughly considered. See *In re Interest of Alan L., supra*.

Tamia argues that she "had never before been on a juvenile probation order." Brief for appellant at 12. However, the evidence before the juvenile court reflects that although Tamia had never been on probation, many levels of probation services and community-based supervision had already been exhausted, and other options did not have a reasonable chance of success.

The juvenile court found that based on the evidence, all levels of probation supervision and community-based services had been exhausted. Based on our de novo review of the record, we agree that all levels of probation supervision and options for community-based services were exhausted. Tamia had been in foster care when she was caught in school with a THC vape. Charges related to that were put on hold until she completed treatment. She went to Red Circle Lodge for treatment but was removed for damage she caused. She was then moved to treatment at Vive, but damaged that facility as well. Then she was placed in this latest shelter, Mark of Honor, where she stole a vehicle and tried to evade the police.

We find that despite extensive efforts made by Tamia's tribal case worker to assist and rehabilitate Tamia through in-home and out-of-home placements, Tamia's unwillingness to cooperate at every previous level of probation supervision and community-based services leaves only the YRTC as a last resort. The juvenile court could reasonably conclude that placing Tamia in a foster home, group home, or even a more structured treatment program would result in the endangerment of Tamia or others. It did not err in finding that all options for probation supervision and community-based services had been exhausted and that Tamia's placement at YRTC was a matter of urgent necessity for her own protection or the protection of others. Accordingly, we affirm Tamia's commitment to the YRTC.

## CONCLUSION

For the reasons stated above, we affirm the juvenile court's May 19, 2025, order committing Tamia to the YRTC.

AFFIRMED.